**NATIONAL PHARMACIES, INC., Plaintiff,**

v.

**Carmen Feliciano DE MELECIO, Secretary Of Health, et al., Defendants.**

**No. Civ. 95–1342(HL).**

United States District Court, D. Puerto Rico.

March 31, 1999.

Jay A. Garcia–Gregory, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for National Pharmacies, Inc., plaintiff.

Esther Castro–Schmidt, Gaztambide & Plaza, San Juan, PR, for Carmen Feliciano–De–Melecio, Honorable Carmen Feliciano de Melecio, as Secretary of Health of Puerto Rico, Department of Health of the Commonwealth of Puerto Rico, acting in her oficial capacity, defendant.

Johanna Emmanuelli–Huertas, Ponce, PR, for College of Pharmacists of Puerto Rico, defendant.

Juan R. Gonzalez–Munoz, Gonzalez Munoz & Quinones, Tridas, San Juan, PR, for Association of Pharmacy Owners of Puerto Rico, Inc., defendant.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is Plaintiff National Pharmacies, Inc.'s ("National") request for declaratory and injunctive relief. National, a New Jersey corporation engaged in the business of filling medical prescriptions through the mail, challenges the constitu-

tionality of certain Puerto Rico statutes which govern the pharmacy industry. National claims that these laws and their attempted enforcement by Defendants violate National's rights under the Dormant Commerce Clause and the First Amendment. Defendants are Carmen Feliciano, the Puerto Rico Secretary of Health; the Colegio de Farmacéuticos ("Colegio"), a quasi-public corporation charged with governing the conduct and defending the rights of pharmacists practicing in Puerto Rico; and the Asociación de Dueños de Farmacias de Puerto Rico ("Asociación"), a non-profit organization comprised of owners of retail pharmacies in Puerto Rico. The Puerto Rico Secretary of Justice has intervened as a defendant in this case.[1] Also, the American Managed Care Pharmacy Association and Retired Persons Services, Inc. have filed amicus curae briefs in support of National's position. The parties have submitted extensive briefs, as well as a set of stipulated facts.[2]

In its complaint and motion for injunctive relief, National challenges sections 385, 396, 401, and 402 of the Pharmacy Act of Puerto Rico[3] and section 433 of the chapter which creates the Colegio de Farmacéuticos.[4] Section 385 requires that every practicing pharmacist be registered with the Board of Pharmacy[5] and be a member of the Colegio. P.R.Laws Ann. tit. 20, § 385. Section 396 reads in pertinent part

Every establishment devoted, or which may hereafter be devoted, to the sale of medicines, chemical or pharmaceutical products, patent medicines, drugs wholesale or retail, or manufacture of medicines shall have to apply to the Secretary of Health for a license and the Secretary of Health shall have power to issue same after inspection of the establishment, provided the establishment, in the discretion of the Secretary of Health, meets the purposes and requirements of this chapter.

*Id.* § 396. Section 401 reads as follows: "In all cases where a pharmacist is practicing his profession he shall be a member of the College of Pharmacists of Puerto Rico, of age, shall manage in person the establishment under his supervision, and shall reside in the town in which he is practicing." *Id.* § 401. Section 402 requires that every pharmacy be managed by a pharmacist authorized to practice in Puerto Rico. The section further requires that the pharmacist may only be absent from the pharmacy for a limited number of hours per week. *Id.* § 402. Section 433 states

All pharmacists admitted to practice the profession by the Board of Pharmacists of Puerto Rico and those pharmacists to whom the Board of Pharmacists has issued special authorization to practice at a Commonwealth or municipal government health facility pursuant to the provisions of section 71 et seq. of this title shall be members of the College.

No person who is not a member thereof may practice the profession of pharmacists in the Commonwealth of Puerto Rico.

*Id.* § 433. The Secretary of Health is charged with inspecting pharmacies in

---

1. *See* 28 U.S.C.A. § 2403(b) (West 1994) (In a suit where the constitutionality of a state law is challenged, the attorney general of the state shall be allowed to intervene).

2. Defendants had objected to stipulated facts numbered 14 and 16. They objected not because they believed them to be untrue, but merely because they felt they were not relevant. These stipulated facts detail the nature of National's operations. The Court holds that these facts are relevant. The objection is denied.

3. P.R.Laws Ann. tit. 20, §§ 381 – 406 (1988).

4. P.R.Laws Ann. tit. 20, §§ 431 – 441 (1988).

5. The Board of Pharmacy is composed of five Puerto Rico pharmacists who are appointed by the Governor. In addition to registering pharmacists, the Board oversees regulations governing the practice of pharmacy and the licensing examination for pharmacists. P.R.Laws Ann. tit. 20, §§ 383 & 384.

Puerto Rico and with enforcing these laws. *Id.* § 383. National's general claim is that this statutory framework prevents it from doing business in Puerto Rico and that therefore the statutes unconstitutionally restrict interstate commerce.

The parties have stipulated to the following facts: Plaintiff National owns and operates a mail-order pharmacy in New Jersey. National is properly registered under the appropriate New Jersey laws and is registered with the Drug Enforcement Administration of the United States Department of Justice. National employs a number of pharmacists who are properly licensed and registered under the relevant laws of New Jersey. National is also registered in twenty-two states as a nonresident pharmacy. National is subject to inspection and audits by authorities from New Jersey, the DEA, and those states where it is registered as a nonresident pharmacy. National's customer base consists of patients throughout the United States. These customers mail their prescriptions to National. The company's pharmacists in New Jersey then fill the prescriptions and mail them out to the customers. There is thus no face-to-face contract between pharmacist and patient. National does not own or operate a pharmacy in Puerto Rico. None of its pharmacists reside in Puerto Rico, are licensed to practice here, or are members of the Colegio. In January 1994 National entered into a contract with Blue Cross of Puerto Rico, a health insurance provider. Pursuant to this agreement, National would fill the prescriptions of Blue Cross' clients by mail.[6]

In addition to the above-mentioned stipulated facts, the record indicates the following: In 1992, the Colegio filed an administrative complaint with the Department of Health against Blue Cross of Puerto Rico. The administrative claim alleged that Blue Cross was beginning a marketing campaign to offer a mail-order pharmacy service to its customers and that such a service violated the pharmacy laws of Puerto Rico.[7] In September 1994, the Colegio moved to dismiss this administrative claim and filed a claim against Blue Cross for declaratory and injunctive relief in Puerto Rico Superior Court. In its Superior Court complaint, the Colegio alleged that Blue Cross' program to provide prescription medicines through the mail meant that prescriptions would be filled by a pharmacist not licensed to practice in Puerto Rico and working at a pharmacy not authorized to do business in Puerto Rico.[8] Therefore, the Colegio claimed, Blue Cross' practice violated the pharmacy laws of Puerto Rico.

During this same time period, the Colegio and the Asociación were attacking the mail-order business on another front. The presidents of both organizations wrote to the Secretary of Health to complain about the mail-order pharmacy business and to inquire as to the Department of Health's position on this practice.[9] The Secretary of Health asked her general counsel for an opinion on the legality of this business. In her counsel's response he opined that the Pharmacy Act provides that only a pharmacy registered in Puerto Rico which employs a pharmacist who is a member of the Colegio can fill a prescription in Puerto Rico. Moreover, the Act requires that the pharmacist be present at the place where the pharmacy operates in Puerto Rico and that the pharmacist reside in the town where he is practicing. The Secretary's counsel concluded that therefore the practice of filling prescriptions outside of Puerto Rico and delivering them by mail to the customers violated the Pharmacy Act.[10] Based on this opinion, the Secretary of

6. Docket no. 55.

7. Docket no. 44, exhibit D.

8. Civil no. KPE 94–0563(907), San Juan Part. Docket no. 37, exhibit E.

9. Docket no. 44, exhibits F & J.

10. Docket no. 44, exhibit N.

Health wrote back to the Colegio and the Asociación on November 29, 1994. In her letters she stated that the mail-order pharmacy business violated Puerto Rico law and that any member of either organization who was aware of this practice should file an administrative complaint with the Department of Health.[11] In January 1995, the Asociación brought an administrative complaint before the Department of Health against Blue Cross, National, other mail-order pharmacies, and other organizations that sponsored health plans which offered this service. The complaint alleged that mail-order pharmacy violated Puerto Rico law.[12] The administrative claim has since been stayed, and the Superior Court case has been dismissed.[13] The administrative claim was stayed pending the resolution of the case before this Court. The Superior Court case was dismissed without prejudice, by agreement of the parties. It appears that the Superior Court case dismissal—like the stay in the administrative case—was entered in deference to the resolution of the controversy presently before this Court.[14]

Faced with this hostility to its modus operandi, National brought the present action. It alleges that the above-cited statutes constitute protectionist measures which prevent it from conducting business in Puerto Rico. Therefore, National argues, these statutes unconstitutionally limit interstate commerce in violation of the Dormant Commerce Clause. National also argues that the Puerto Rico statutes are preempted by the federal Comprehensive Drug Abuse Prevention and Control Act of 1970.[15] National seeks declaratory and injunctive relief. Defendants have opposed this request, arguing that National does not have standing to bring this claim; that the practice of pharmacy is a profession and not a part of interstate commerce; and that the subject laws constitute a legitimate exercise of Puerto Rico's police powers over the health and welfare of its citizens.

## DISCUSSION

### 1. National's standing

 The Secretary of Justice argues that National lacks standing to bring this

11. Docket no. 44, exhibits G & K.

12. Docket no. 37, exhibit I.

13. Civil no. KPE94–0563 (803), Puerto Rico Superior Court, San Juan Part; Complaint no. Q–95–1–01, Puerto Rico Department of Health Administrative hearing. The Court takes judicial notice of the proceedings in these cases. *See Lamar v. Micou*, 114 U.S. 218, 223, 5 S.Ct. 857, 859, 29 L.Ed. 94 (1885) ("The law of any State of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof."); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 609 n. 30 (7th Cir.1993) ("This court can take judicial notice of the decisions of federal and state courts."); *Parente v. Town of West Warwick*, 868 F.2d 522, 523 (1st Cir.1989) (taking judicial notice of a state court's opinion); *see generally* Fed.R.Evid. 201.

In order to make the record as complete as possible, the Court orders the Clerk to enter and translate the following documents from the Superior Court case: a motion to stay dated October 5, 1995, an order setting a status conference to discuss the motion, the minutes to the status conference, and the judgment dismissing the case. The Court further orders that the notification of stay in the administrative claim be filed and translated.

14. In the Superior Court case, the parties agreed to a dismissal of the case at a status conference held on October 25, 1995. The minutes to the conference do not specify the parties' reasons for this agreement. The conference was held to discuss a motion by Defendant Blue Cross. In that motion Blue Cross requested that the case be stayed pending the resolution of the federal court case and stated that the parties were in agreement on this matter. *See* Motion of Blue Cross filed October 5, 1995 & Notification of status conference dated October 16, 1995. Accordingly, the Court assumes that the Superior Court case was dismissed for the reasons set forth in the motion to stay, that is, to allow this Court to resolve the present controversy.

15. Pub.L. No. 91–513, 84 Stat. 1236 (codified in scattered sections of 18, 19, 21, 26, 31, 40, 42, and 46 U.S.C.).

claim.[16] He argues that National's claims are hypothetical and that it has not suffered any concrete injuries. Standing, one of the most complex areas in the field of federal jurisdiction, is a threshold issue which goes to a federal court's power to hear a claim. *Berner v. Delahanty, II*, 129 F.3d 20, 23 (1st Cir.1997). Before a court may consider the merits of a case, it must first determine whether there is standing to bring the cause of action. *Id.* If the plaintiff lacks standing, the court lacks jurisdiction to entertain the case. *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 12 (1st Cir.1996). In order to have standing, the plaintiff must establish the following elements: (1) an "injury in face"—that the plaintiff has suffered an actual or threatened injury which is particularized and concrete, and not merely hypothetical or conjectural; (2) causation—that the injury is fairly traceable to complained-of conduct of the defendant; and (3) redressability—that it is likely that the alleged injury will be redressed by the requested relief. *Legal Aid Soc'y of Hawaii v. Legal Services Corp.*, 145 F.3d 1017, 1030 (9th Cir.1998) (White, J.(Ret.), sitting by designation); *Gardner*, 99 F.3d at 13; *Caribbean Int'l News Corp. v. Fuentes Agostini*, 12 F.Supp.2d 206, 211–12 (D.P.R.1998).

The "injury in fact" element requires that the plaintiff have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations and internal quotations omitted). The concept of imminence is intended to ensure that the plaintiff's alleged injury is not overly speculative. *Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 56 (1st Cir.1998). In the present case it is uncontested that National operates a mail-order pharmacy and that it has contracted with Blue Cross of Puerto Rico to provide such services to Puerto Rico residents. It is also uncontested that the Secretary of Health believes such practice to be illegal under Puerto Rico law and that she has encouraged the members of the Colegio and the Asociación to bring lawsuits against mail-order pharmacy companies.[17] The Asociación has done exactly that with its administrative complaint before the Department of Health against Blue Cross, National, and other mail-order pharmacies. This administrative complaint alleged that mail-order pharmacy violated Puerto Rico law.[18] The conduct of Defendants as a whole constitutes a concrete, non-speculative threat to National's business operations. Thus, there is present in the case a viable injury in fact for purposes of standing.

With regard to the other two elements of standing, any injury suffered by National would be properly redressed by an action seeking to have the Puerto Rico laws regulating pharmacy declared unconstitutional and naming as a defendant the Secretary of Health in her official capacity, the government official charged with enforcing these laws.[19] *See Gardner*, 99 F.3d

---

16. In addition to claiming that National lacks standing, the Secretary of Justice argues that this controversy is not ripe for adjudication. Whether a plaintiff has suffered an injury is an integral issue under both the standing and ripeness doctrines. Oftentimes the two concepts overlap. In such cases, whether the injury analysis is done as a question of standing or of ripeness is of no moment. *See generally* Erwin Chemerinsky, *Federal Jurisdiction* § 2.4.1, at 114–15 (2d ed.1994); *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 760 n. 3 (11th Cir.1991). So it is here. In the interest of conciseness, the Court will treat the ripe-ness and standing arguments as one and the same.

17. Docket no. 44, exhibits G & K.

18. Docket no. 37, exhibit I.

19. In its complaint, National seeks declaratory and injunctive relief, but no monetary relief. Thus, this claim is properly brought against the Secretary of Health in her official capacity only. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2312 n. 10, 105 L.Ed.2d 45 (1989).

at 13; *Caribbean Int'l News,* 12 F.Supp.2d at 212. Furthermore, National's alleged injury is traceable to these laws and their attempted enforcement to stop National from filling the prescriptions of Puerto Rico residents by mail. Thus, the three prongs of the standing requirement are met.

■ The standing doctrine also embodies prudential concerns regarding the proper exercise of federal jurisdiction. *Dubois v. United States Dep't of Agric.,* 102 F.3d 1273, 1281 (1st Cir.1996); *United States v. AVX Corp.,* 962 F.2d 108, 114 (1st Cir.1992). To meet these additional concerns, a suit must satisfy certain criteria. First, the complaint must "fall within the zone of interests protected by the law invoked." *Gardner,* 99 F.3d at 15 (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (internal quotations omitted)); *Caribbean Int'l,* 12 F.Supp.2d at 213. Second, the plaintiff generally should assert only his own rights and should not base his claim on the rights and interests of a third party. *Gardner,* 99 F.3d at 15 (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). Third, the case must contain more than "abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches." *Gardner,* 99 F.3d at 15 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) (internal quotations omitted)).

In the present case, National's claims implicate its rights to operate in interstate commerce free from unconstitutional burdens; therefore, it falls within the zone of protected constitutional rights. Second, National is bringing its claim solely on its own behalf. Third, its claims that the challenged laws prevent it from doing business in Puerto Rico are sufficiently specified grievances. Therefore, the Court finds that these additional criteria are also satisfied. Based on all of the above, the Court finds that National has established the existence of an actual or threatened injury which is traceable to the challenged statutes and which would be redressed by the relief requested. Also, there are prudential concerns which justify the exercise of federal jurisdiction. Accordingly, the Court finds that National has standing to bring this claim.

### 2. Abstention

■■ The Secretary of Health argues that this Court should refrain from hearing this controversy under the abstention doctrines of either *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) or *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstention is an "extraordinary and narrow exception" to a federal court's duty to hear a case properly before it. *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959) (internal quotations omitted)); *Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975). A federal court has a "virtually unflagging obligation" to exercise its jurisdiction. *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246; *Pustell v. Lynn Public Schools,* 18 F.3d 50, 53 (1st Cir.1994). Generally, federal courts should almost always assert their jurisdiction. *Delgado v. Plaza Las Americas, Inc.,* 139 F.3d 1, 3 (1st Cir.1998). This jurisdiction should not be lightly relinquished, even when the court is confronted with difficult state law issues or parallel state litigation. *Lundborg v. Phoenix Leasing, Inc.,* 91 F.3d 265, 272 (1st Cir.1996). A federal court ordinarily may abstain out of deference to an ongoing local court proceeding which was initiated prior to the federal action. *Chaulk Serv., Inc. v. Massachusetts Comm'n Against Discrimination,* 70 F.3d

1361, 1368 (1st Cir.1995); *see also Harris County*, 420 U.S. at 84, 95 S.Ct. at 875 ("Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim, we have regularly ordered abstention.").

■ In the case before the Court, there are no ongoing local proceedings to which this Court may defer. Of the two proceedings that were begun prior to the initiation of the present case, one was dismissed by mutual agreement of the parties and the other was stayed. The administrative court complaint was stayed precisely to allow this Court to rule first, and it appears that the dismissal of the Superior Court case was done for the same reason. Thus, the local proceedings have deferred to the federal court. An abstention now would unduly delay the final resolution of this controversy and would run counter to the justification for the staying of the local proceedings. Because the local fora have deferred to this one, because any abstention would further delay this case, and because this Court should be hesitant to abstain from hearing a case properly before it, the Court holds that abstention is not appropriate in this case. *See also Cuesnongle v. Ramos*, 835 F.2d 1486, 1499–1500 (1st Cir.1987) (Abstention not appropriate where it would cause delay and where highest local court has declined to hear matter).

### 3. National's argument that Puerto Rico's pharmacy laws are preempted by federal statutes

■ In addition to claiming that the Puerto Rico statutes unconstitutionally limit interstate commerce and the First Amendment, National also asserts that the statutes are preempted by the Comprehensive Drug Abuse Prevention and Control Act. A court should first attempt to resolve a case on statutory grounds before addressing any constitutional ones. *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 582, 99 S.Ct. 1355, 1364, 59 L.Ed.2d 587 (1979); *Cuesnongle*, 835 F.2d

at 1493–94; *Aggarwal v. Ponce School of Medicine*, 745 F.2d 723, 726 (1st Cir.1984). Thus, the Court first must address National's preemption argument.

■ The Constitution provides that federal statutes "shall be the supreme Law of the Land," notwithstanding any contrary state laws. U.S. Const. art. VI., § 2. Therefore, when a state statute conflicts with a federal one, the latter preempts the former; the state statute thus is without effect. *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981); *Rini v. United Van Lines*, 104 F.3d 502, 504 (1st Cir.1997). If Congress has not made an express statement that a federal law should supplant a state one, preemption may be established in one of two ways. First, if Congress intends that a federal statute "occupy a given field," state law on that area is preempted. *California v. ARC America Corp.*, 490 U.S. 93, 100, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). Second, state law is preempted when it "actually conflicts" with federal law so that it is impossible to comply with both a federal and state statute or when the state law becomes an obstacle to the accomplishment of Congressional intent. *Id.* at 100–01, 109 S.Ct. at 1665.

■ In the determination of whether a federal law preempts a state law, Congress' purpose is the "ultimate touchstone." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996) (quoting *Retail Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 223, 11 L.Ed.2d 179 (1963) (internal quotations omitted)). When making its analysis, a court should begin with the assumption that a state's historic powers should not be superseded by a federal statute unless it was Congress' clear and manifest intent to do so. *ARC*, 490 U.S. at 101, 109 S.Ct. at 1665; *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); *Massachusetts v. F.D.I.C.*, 102

F.3d 615, 622 (1st Cir.1996). A court should not quickly infer a congressional attempt to preempt traditional police powers of the states. *Smith v. America West Airlines, Inc.*, 44 F.3d 344, 346 (5th Cir. 1995). These historic police powers include those of a state to legislate to protect the safety and health of its citizens. *Medtronic*, 518 U.S. at 475, 116 S.Ct. at 2245.

■ Where Congress has included an express clause on preemption, a court should begin its analysis with that clause's language. *Grenier v. Vermont Log Bldgs., Inc.*, 96 F.3d 559, 562–63 (1st Cir.1996); *Wilson v. Bradlees of New England, Inc.*, 96 F.3d 552, 554 (1st Cir.1996). The federal statute relevant to this case contains the following provision:

**Application of State Law**

No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C.A. § 903 (West 1981). This express statement by Congress that the federal drug law does *not* generally preempt state law gives the usual assumption against preemption additional force. *United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660, 668 (4th Cir.1996). In the present case, the Puerto Rico laws which National is challenging regulate the registration and licensing of pharmacists in Puerto Rico. The federal statutes which National claims to preempt the local laws deal with the manufacture, distribution, and dispensing of controlled substances. "Controlled substances" are defined by the federal statute as those drugs or medications which have the potential for abuse and which can cause dependency. *See* 21 U.S.C.A. §§ 802(6) & 812 (West 1981 &

Supp.1998). The Puerto Rico statutes, by contrast, govern pharmacies and pharmacists in their work with both controlled substances and other classes of medications. National does not indicate how it would be impossible to comply with both the federal and Puerto Rico laws nor how the Puerto Rico laws regulating pharmacists create an obstacle to the fulfillment of the goals of the Comprehensive Drug Abuse Prevention and Control Act. Moreover, National does not indicate that this federal law was intended to occupy the entire field of regulation of pharmacists. National does argue that the requirements of the Puerto Rico laws unduly burden interstate commerce and that National's own compliance with the federal statutes and New Jersey's pharmacy laws should satisfy any concerns Puerto Rico might have regarding the control and regulation of pharmacists. This claim goes to the question of whether the Puerto Rico laws constitute an unconstitutional restriction on interstate commerce, and the Court addresses that issue below. It is a claim which does not, however, demonstrate that there is an actual conflict between the federal and local statutory regimes. Therefore, the Court denies National's argument that the challenged Puerto Rico laws are preempted by the Comprehensive Drug Abuse Prevention and Control Act.

*4. Defendants' argument that pharmacy is a profession and not subject to interstate commerce analysis*

■ Defendants claim that the practice of pharmacy is a profession, not a part of commerce, and Puerto Rico's regulation of pharmacists is therefore not subject to the strictures of the dormant commerce clause. It is clear that the states have broad powers to regulate and license the practice of the professions. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2015–16, 44 L.Ed.2d 572 (1975); *Goldfarb v. Supreme Court of Virginia*, 766 F.2d 859, 862 (4th Cir.1985). It is similarly clear that the states' police pow-

ers include the authority to legislate to protect the health and safety of their citizens. *See Medtronic,* 518 U.S. at 475, 116 S.Ct. at 2245; *Maine v. Taylor,* 477 U.S. 131, 151–52, 106 S.Ct. 2440, 2454, 91 L.Ed.2d 110 (1986); *Ferndale Laboratories v. Cavendish,* 79 F.3d 488, 495 (6th Cir.1996). In the present case, Puerto Rico has a legitimate interest in regulating the pharmacy industry within its borders. *See Ferndale,* 79 F.3d at 495. When a state legislates in an area of legitimate local concern, however, it continues to be limited by the Commerce Clause. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 471, 101 S.Ct. 715, 727, 66 L.Ed.2d 659 (1981). This limitation applies even for state regulations regarding the health of its citizens. *See Taylor,* 477 U.S. at 137–152, 106 S.Ct. at 2446–54; *Dean Milk Co. v. City of Madison, Wis.,* 340 U.S. 349, 353–57, 71 S.Ct. 295, 297–99, 95 L.Ed. 329 (1951).

Courts have considered whether state laws that regulate a profession unconstitutionally limited interstate commerce. *See Head v. New Mexico Bd. of Exam'r in Optometry,* 374 U.S. 424, 428–29, 83 S.Ct. 1759, 1762–63, 10 L.Ed.2d 983 (1963) (law prohibiting optometrists from mentioning specific prices in their advertising); *Tolchin v. Supreme Court of New Jersey,* 111 F.3d 1099, 1106–11 (3rd Cir.1997) (requirements for the practice of law in state); *Kirkpatrick v. Shaw,* 70 F.3d 100, 103 (11th Cir.1995) (rules for lawyers' admission to state bar); *Tetra Technologies, Inc. v. Harter,* 823 F.Supp. 1116, 1121–24 (S.D.N.Y.1993) (law on licensing engineers); *see also Ferndale,* 79 F.3d at 492–96 (regulation of wholesale distributors of pharmaceuticals); *K–S Pharmacies v. American Home Products,* 962 F.2d 728, 730–32 (7th Cir.1992) (statute forbidding price discrimination in wholesale transac-

tions of prescription drugs) (Easterbrook, J.). In the Sherman Act antitrust context, the professions are considered a part of interstate commerce.[20] *See Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 329–33, 111 S.Ct. 1842, 1847–49, 114 L.Ed.2d 366 (1991) (Allegation that hospitals conspired to exclude a single physician from the market for ophthalmological services in Los Angeles was sufficient to establish a nexus to interstate commerce for purposes of antitrust jurisdiction); *Goldfarb,* 421 U.S. at 786–88, 95 S.Ct. at 2012–14 (In case involving a minimum legal fee schedule established by bar association, Court rejected argument that the learned professions were not a part of trade or interstate commerce); *Boddicker v. Arizona State Dental Ass'n,* 549 F.2d 626, 629–32 (9th Cir.1977) (Dental associations' membership requirements on individual dentists affected interstate commerce and these practices were not entitled to a "learned profession" exemption). These antitrust cases have included the practice of pharmacy. *See Northern California Pharm. Ass'n v. United States,* 306 F.2d 379, 386–88 (9th Cir.1962); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n,* 484 F.Supp. 1195, 1206–07 (D.D.C.1980) (Mail order pharmacy company challenged defendants' practices which had affected interstate commerce), *rev'd in part on other grounds,* 663 F.2d 253 (D.C.Cir.1981); *Am. Pharm. Ass'n v. United States Dep't of Justice,* 344 F.Supp. 9, 12 (E.D.Mich.1971) (Rejecting an argument that the professional practice of pharmacy is exempt from the antitrust laws), *aff'd* 467 F.2d 1290 (6th Cir.1972); *United States v. Utah Pharm. Ass'n,* 201 F.Supp. 29, 32–33 (D.Utah 1962) (Alleged conspiracy by pharmacists to fix and control prices of prescriptions affected interstate commerce).

---

**20.** The scope of the Sherman Act is coterminous with Congress' powers to regulate interstate commerce. *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 194, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974); *Western Waste Serv. Systems v. Universal Waste Control,* 616 F.2d 1094, 1096 (9th Cir.1980); *J.P. Mascaro & Sons, Inc. v. William J. O'Hara, Inc.,* 565 F.2d 264, 267 (3rd Cir.1977). Thus, the Court shall look to antitrust cases for guidance on the issue of whether the pharmacy profession is part of interstate commerce.

In the present case, Defendants cite to no case which holds that the practice of pharmacy, as a profession, is exempt from the jurisprudence on the dormant commerce clause. The case law cited above indicates that in fact the contrary proposition is true. This point bears clarification. The subject laws on the practice of pharmacy within Puerto Rico's territory constitute a legitimate exercise of its police powers to regulate a profession whose practice affects the health of Puerto Rico's citizens. These laws, however, must comply with—and are not exempt from—the limitations of the Commerce Clause. *See Taylor,* 477 U.S. at 150–51, 106 S.Ct. at 2454; *Clover Leaf Creamery,* 449 U.S. at 471, 101 S.Ct. at 727; *Head,* 374 U.S. at 427–29, 83 S.Ct. at 1761–63. The Court therefore rejects Defendants' argument that pharmacy is a profession and not part of interstate commerce.

5. *National's argument that the Puerto Rico pharmacy laws unconstitutionally limit interstate commerce*

National's primary argument is that the Puerto Rico laws which regulate the practice of pharmacy constitute an unconstitutional burden on interstate commerce. The Commerce Clause of the Constitution expressly provides Congress with the power to regulate interstate commerce. U.S. Const. art. I, § 8, cl. 3. As a complement to this explicit grant of authority to Congress, the courts have developed the doctrine of the Dormant Commerce Clause. Under this doctrine, states are limited in their authority to enact laws which impose an undue burden on interstate commerce.[21] *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 35–36, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980); *United Egg Producers v. Dep't of Agric.,* 77 F.3d 567, 570 (1st Cir.1996). The Dormant Commerce Clause prohibits states from regulating in a manner that would discrim-

inate against or unduly burden interstate commerce and would thereby impede free trade in the national marketplace. *General Motors Corp. v. Tracy,* 519 U.S. 278, 287, 117 S.Ct. 811, 818, 136 L.Ed.2d 761 (1997). States may not create barriers discriminating against interstate trade. *Lewis,* 447 U.S. at 35, 100 S.Ct. at 2015. In this context, "discrimination" refers to a state's different treatment for in-state economic interests as compared to out-of-state interests, with the treatment benefitting the former and burdening the latter. *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality,* 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994). A court should view with suspicion a state statute which requires that business operations be done in the home state when they could be done more efficiently out of state. Even though the state may be pursuing a legitimate local interest with such a regulation, the burden it imposes on commerce will generally cause the regulation to be declared *per se* illegal. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 145, 90 S.Ct. 844, 849, 25 L.Ed.2d 174 (1970).

Additionally, the Commerce Clause prevents a state statute from being applied to commerce which occurs wholly outside the state's borders, even though the commerce may have effects within the state. *Healy v. Beer Institute, Inc.,* 491 U.S. 324, 336, 109 S.Ct. 2491, 2499, 105 L.Ed.2d 275 (1989); *Brown–Forman Distillers v. N.Y. State Liquor Auth.,* 476 U.S. 573, 582–85, 106 S.Ct. 2080, 2086–87, 90 L.Ed.2d 552 (1986); *Edgar v. MITE Corp.,* 457 U.S. 624, 641–43, 102 S.Ct. 2629, 2640–41, 73 L.Ed.2d 269 (1982). The critical question is whether the practical effect of the state law is to control commerce beyond the state's borders. *Healy,* 491 U.S. at 336, 109 S.Ct. at 2499. Any state regulation which attempts to directly assert jurisdiction over persons or property out-

---

**21.** Puerto Rico is treated as a state for purposes of the Dormant Commerce Clause. *Used Tire Int'l, Inc. v. Diaz–Saldana,* 155 F.3d 1, 4 n. 2 (1st Cir.1998); *Trailer Marine Transp. Corp. v. Rivera Vazquez,* 977 F.2d 1, 7 (1st Cir.1992).

side the state's territory exceeds the limits of that state's power. *Edgar*, 457 U.S. at 643, 102 S.Ct. at 2641.

#### a. The requirements of membership in the Colegio of sections 385, 401, and 433

One of National's challenges is to the provisions of sections 385, 401, and 433 which require that in order to practice pharmacy in Puerto Rico, a pharmacist must be a member of the Colegio. P.R.Laws Ann. tit. 20, §§ 385, 401, & 433. National claims that it is impossible for out-of-state pharmacists to become members of the Colegio and that this membership requirement places an insurmountable burden on interstate commerce. National fails, however, to explain these assertions. Nowhere' does National establish what are the requirements for membership in the Colegio, which specific requirement prevents an out-of-state pharmacist from joining, or how this requirement burdens interstate commerce. The extent of National's argument on this point is the repeated allegation that the Colegio is "guild-like." It belabors the pellucidly obvious to state that, without a greater development of this issue, the Court is unable to hold that a Puerto Rico statute is unconstitutional merely because it imposes a requirement that pharmacists belong to an organization which is "guild-like." [22] Therefore, the Court rejects this argument.[23]

#### b. The extraterritorial effects of sections 396, 401, and 402

National also challenges three other sections on the grounds that they regulate commerce occurring outside the borders of Puerto Rico. Specifically, National argues that sections 396, 401, and 402 unconstitutionally burden interstate commerce by requiring that a prescription for a Puerto Rico consumer may only be filled by a pharmacist residing in the town where his pharmacy is located; that a pharmacy serving Puerto Rico must be managed by a pharmacist who must be present at the pharmacy for a specified number of hours per week; and that any pharmacy serving Puerto Rico consumers be licensed by the Secretary of Health and be subject to inspections by the Secretary. National claims that it is unable to comply with these requirements and that therefore these laws constitute an undue burden on interstate commerce. Section 396 reads in part as follows:

Every establishment devoted, or which may hereafter be devoted, to the sale of medicines, chemical or pharmaceutical products, patent medicines, drugs wholesale or retail, or manufacture of medicines shall have to apply to the Secretary of Health for a license and the Secretary of Health shall have power to issue same after inspection of the establishment, provided the establishment, in the discretion of the Secretary

---

22. Generally, guilds are organizations dedicated to protect and further a common interest of its members. In medieval Europe, guilds were professional organizations made up of members from a particular trade or craft and were dedicated to promoting the welfare of that craft and its members. Merchant guilds were powerful associations in the 12th and 13th centuries. Guilds were not limited to professional or economic goals, however. Some were religious confraternities with purely spiritual objectives. Others had social functions. IV *The New Encyclopædia Britannica Micropædia* at 786 (15th ed.1984).

23. Section 385 also requires that a pharmacist must be registered with the Board of Pharmacy. National claims that it is impossible for it to register with the Board and that this requirement constitutes an insurmountable burden on interstate commerce. This challenge must be rejected for the same reason that the challenge to the Colegio membership requirement was rejected. That is, there is no developed argument to explain why National cannot register with the Board. National does not specify what rule, regulation or requisite prevents it from registering. Thus, the Court rejects the challenge to this part of section 385 as well.

of Health, meets the purposes and requirements of this chapter.

P.R.Laws Ann. tit. 20, § 396. Section 401 reads

**Qualification for practice**

In all cases where a pharmacist is practicing his profession he shall be a member of the College of Pharmacists of Puerto Rico, of age, shall manage in person the establishment under his supervision, and shall reside in the town in which he is practicing.

*Id.* § 401. Section 402 reads in pertinent part

**Management of establishments by pharmacist required; responsibility**

Every establishment engaged in the preparation, sale or distribution of medicines, chemical or pharmaceutical products and drugs wholesale or retail, such as pharmacies ... shall be managed personally by a duly registered pharmacist authorized to practice his profession in the Commonwealth of Puerto Rico....

The pharmacist shall at no time be absent from the pharmacy ... under his care or supervision except for temporary absences not exceeding six (6) hours during a working day nor more than thirty (30) hours in each calendar week, during which absence he shall be substituted by a duly authorize pharmacy assistant....

*Id.* § 402.

■ Where, as in the present case, a federal court is asked to rule on the constitutionality of a state or local statute, serious federalism concerns come into play. A federal court faced with a challenge to the constitutionality of a federal law should attempt to construe the statute in a way that will maintain the law within constitutional limits. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 78, 117 S.Ct. 1055, 1074, 137 L.Ed.2d 170 (1997); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d

645 (1988); *Cuesnongle,* 835 F.2d at 1495. A federal court does not have this same authority to narrowly construe, however, when a state law is at issue. *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972); *Gooding v. Wilson,* 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972); *United States v. Thirty-Seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1405, 28 L.Ed.2d 822 (1971); *K–S Pharmacies,* 962 F.2d at 730.

That is not to say that a federal court called upon to rule on a state law's compliance with the United States Constitution should hide behind the mantle of federalism and shirk all duties of statutory interpretation. Whenever a federal court is confronted with a state statute's constitutionality, it must of course interpret the statute. *Broadrick v. Oklahoma,* 413 U.S. 601, 617 n. 16, 93 S.Ct. 2908, 2919 n. 16, 37 L.Ed.2d 830 (1973); *Sherman v. Community Consol. Sch. Dist. 21,* 980 F.2d 437, 442 (7th Cir.1992); *Caribbean Int'l News,* 12 F.Supp.2d at 215. In so doing, the federal court should consider the same principals that the state court would. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982); *K–S Pharmacies,* 962 F.2d at 730; *Whiting v. Town of Westerly,* 942 F.2d 18, 21 n. 3 (1st Cir.1991).

The Court finds guidance in Judge Easterbrook's reasoning in *K–S Pharmacies.* In that case, three Wisconsin pharmacies and a trade association alleged that American Home Products ("AHP") violated a state law which required all sellers of medicines to offer to all its purchasers the same price that it offered to its "most favored purchaser." 962 F.2d at 729–30. AHP, a seller of medicines, responded that the law was an unconstitutional burden on interstate commerce. The statute did not specify whether the phrase "most favored purchaser" included purchasers outside Wisconsin or only purchasers within the state. The Seventh Circuit recognized

that states do not have the power to legislate beyond their own borders and that the Supreme Court of Wisconsin had itself acknowledged this limitation in rulings it had made on state tax legislation. *Id.* at 730. Furthermore, a state statute which requires a seller to charge the same price within its borders as it does outside them is unconstitutional under the Dormant Commerce Clause. *Id.* The Seventh Circuit concluded that therefore the Wisconsin Supreme Court would interpret the phrase "most favored purchaser" to mean "most favored purchaser *in Wisconsin.*" *Id.* at 730–31 (emphasis added).

The Seventh Circuit's reading of the state statute is not a remarkable or controversial decision. To read the statute literally so that it applied to most favored purchasers anywhere in the country would have given the statute an interpretation which would have contravened the Wisconsin Supreme Court's practice on statutory construction, would have read the law to be in obvious violation of the Dormant Commerce Clause, and would have transgressed the universally accepted premise that a state may not legislate beyond its own borders. An analogous analysis is appropriate in the present action. Section 396 provides that the Secretary of Health shall issue a license to a pharmacy after inspecting it. The section does not specify where the pharmacies are that she may inspect. Similarly, sections 401 and 402 of the Pharmacy Act place limitations on pharmacies, but they do not specify which pharmacies. A reading of these statutes to hold that the Puerto Rico Secretary of Health may inspect out-of-state pharmacies or that a pharmacist in another state must reside in the town where he is practicing or that an out-of-state pharmacist may only be absent from his pharmacy during the times set forth in section 402 would read these sections to be an unconstitutional attempt to regulate commerce outside the borders of Puerto Rico. *See Healy,* 491 U.S. at 336, 109 S.Ct. at 2499; *Brown–Forman Distillers,* 476 U.S. at 582–85, 106 S.Ct. at 2086–87; *Edgar,* 457

U.S. at 641–43, 102 S.Ct. at 2640–41; *K–S Pharmacies,* 962 F.2d at 730–31. The Puerto Rico Supreme Court has recognized that a state may exercise jurisdiction only over persons and things located within its territory. *Pueblo v. Contreras,* 95 J.T.S. 161, 402 n. 1 (1995); *Toro Ruiz v. Junta de Libertad Bajo Palabra,* 93 J.T.S. 120, 11033 n. 2 (1993); *Medina v. Tribunal Superior,* 104 P.R.Dec. 346, 348, 4 Official Translations 483, 486 (1975). Therefore, this Court concludes that the Puerto Rico Supreme Court would read the provision in section 396 on inspections by the Secretary of Health, in section 401 on the pharmacist's town of residence, and in section 402 on hours when the pharmacist must be present at the pharmacy to refer only to "establishments" or "pharmacies" *in Puerto Rico.* Accordingly, the Court holds that these provisions are not applicable to the management and operation of National's business in New Jersey. These provisions cannot be used to prevent National from servicing customers in Puerto Rico. Because the Court holds that these provisions, as construed in this opinion, do not apply to National, the Court need not address at this time National's argument that the provisions constitute an undue burden on interstate commerce. Accordingly, this argument is denied without prejudice.

The conclusion that these laws should only apply to pharmacies in Puerto Rico and not to National's operations is supported by a second reason. The Pharmacy Act was enacted in 1945; the statutes which created the Colegio took effect in 1938. *See* 1945 *Laws of Puerto Rico* No. 282, at 998–1034, May 15, 1945; 1938 *Laws of Puerto Rico* No. 243, at 458–63, May 15, 1938. Although the laws have been amended over the years, they have not been substantially changed, at least not in any way relevant to the present controversy. It is evident from the language of the statutes that they were not enacted with mail-order pharmacies in mind: nowhere is there any mention of them. This is not surprising, given the fact that mail-order

pharmacies a la National's operations did not exist at the time these statutes were originally enacted.[24] Based on a reading of the laws as a whole and on their historical context, it is apparent that Puerto Rico's pharmacy laws were drafted with the intention of regulating and licensing only those pharmacies that were operated and located in Puerto Rico.

National's recourse, then, is to seek a license from the Secretary of Health and to register with the Board of Pharmacy. The Court recognizes that the Puerto Rico pharmacy laws do not specifically provide for mail-order pharmacies. This is an oversight which can be readily corrected. The statutes and regulations of a number of states offer a wide range of examples on how to deal with this industry. In all, at least thirty-eight states have enacted measures on mail-order pharmacies. *See* Ala. Code § 34–23–31; Alaska Stat. § 08.80.158; Ark.Code Ann. § 17–92–401; Cal.Bus. & Prof.Code § 4112; Colo.Rev. Stat.Ann. § 12–22–130; Conn.Gen.Stat. Ann. §§ 20–627 to 20–630; Del.Code Ann. tit. 24, §§ 2538 – 2540; Fla.Stat. ch. 465.0156; Haw.Rev.Stat. § 461–15; Idaho Code §§ 54–1743 to 54–1748; 225 Ill. Comp.Stat. 85/16a; Ind.Code. § 25–26–13– 17; Iowa Code § 155A.13A; Kan.Stat.Ann. § 65–1657; Ky.Rev.Stat.Ann. § 315.0351; La.Rev.Stat.Ann. §§ 2702 – 2704; Me.Rev. Stat.Ann. tit. 32, §§ 13721, 13751; Md. Code Ann., Health Occ. § 12–403; Mich. Comp.Laws § 333.17748; Minn.Stat. § 151.19; Miss.Code.Ann. § 73–21–106; Mo.Ann.Stat. § 338.337; Mont.Code Ann. § 37–7–703; Neb.Rev.Stat. § 71–2407; Nev.Rev.Stat. § 639.2328; N.M.Stat.Ann. § 61–11–14.1; N.C.Gen.Stat. § 90–85.21A; N.D.Cent.Code § 43–15–34.1; Or.Ad-min.R. 855–041–0300; S.C.Code Ann.

§ 40–43–83; S.D. Codified Laws §§ 36– 11–19.2 to 36–11–19.9; Tenn.Code Ann. § 63–10–410; Tex. Health Code Ann. 4542a–1; Utah Code §§ 58–17a–102 & 58– 17a–303; Va.Code Ann. § 54.1–3434.1; Wash.Rev.Code §§ 18.64.350 to 18.64.400; W.Va.Code § 30–5–6a; Wyo.Stat.Ann. § 33–24–152.

A provision on mail-order pharmacy may be as simple as a single administrative regulation. For example, Oregon's administrative rules require simply that any mail-order pharmacy shall be registered with Oregon's Board of Pharmacy, be registered in good standing in the state where it is located, and designate one of its pharmacists to be responsible for all prescriptions delivered to Oregon residents. Or.Admin.R. 855–041–0300. Missouri has a statute which is similarly concise. It requires only that any out-of-state pharmacy be licensed with Missouri's board of pharmacy. Mo.Ann.Stat. § 338.337. Other states have more complex requirements. Nevada mandates that any mail-order pharmacy be licensed with the state board; that it also be licensed in the state where it is located; that it comply with all federal laws and regulations; and that it submit evidence that its facility and records comply with the laws of the state where it is located. Nev.Rev.Stat. § 639.2328. California requires that every out-of-state mail-order pharmacy register with the California board of pharmacy; provide the names of its agent for service of process in California, its pharmacists, and its corporate officers; comply with the pharmacy laws of the state where it is located; keep records of all controlled substances or potentially dangerous drugs dispensed to California customers; and maintain a toll-

---

**24.** After World War II, the United States Department of Veterans Affairs was confronted with the problem of having many of its VA hospitals being responsible for providing services to all the veterans living in what were often large territories. To accomplish this, the department began to use mail-order delivery of prescription drugs. The American Association of Retired Persons established a similar service in 1959 to fill prescriptions for its members in remote rural areas. The success of the AARP's program piqued the private sector's interest, which began to form for-profit mail-order pharmacies in the 1970s and 1980s. *See* docket no. 77, at 3–4; Suz Redfearn, *Mail-order Pharmacies,* The Greater Baton Rouge Business Report, April 16, 1996.

free telephone service to allow for communications between California patients and pharmacists at the mail-order pharmacy. Cal.Bus. & Prof.Code § 4112. Delaware, Iowa, and Kansas all have statutes with requirements comparable to those of California's, including that for a toll-free telephone number for customer questions. Del.Code Ann. tit. 24, §§ 2538–2540; Iowa Code § 155A.13A; Kan.Stat.Ann. § 65–1657.

The Court, of course, makes no judgment as to which of the variety of state statutes would best enable Puerto Rico to regulate mail-order pharmacy.[25] The Court holds only that the challenged provisions in sections 396, 401, and 402—that a prescription for a Puerto Rico patient may only be filled by a pharmacist residing in the town where his pharmacy is located, that a pharmacist must be present at the pharmacy he manages for a specified number of hours per week, and that any pharmacy be subject to inspections by the Secretary of Health—do not apply to pharmacies outside of Puerto Rico and, so construed, do not unconstitutionally burden interstate commerce. Declaratory judgment shall be entered to this effect. National's proper recourse is to seek licensing and registration from the appropriate Puerto Rico authorities. And because the above-mentioned provisions of sections 396, 401, and 402 do not apply to out-of-state pharmacies, National may not be denied a license or registration on the grounds that it does not comply with these provisions.[26]

WHEREFORE, the Court denies without prejudice National's challenge to the constitutionality of the above-discussed statutes regulating the practicing of pharmacy in Puerto Rico. Declaratory judgment shall be entered holding that the provision of 20 L.P.R.A. § 396 requiring that a pharmacy be subject to inspections by the Secretary of Health, the provision of 20 L.P.R.A. § 401 requiring that a pharmacist reside in the town where his or her pharmacy is located, and the provision in 20 L.P.R.A. § 402 specifying the number of hours per week that a pharmacist must be present at his or her pharmacy apply only to pharmacies in Puerto Rico. Accordingly, National's out-of-state mail-order pharmacy may not be denied a license or registration on the grounds that it does not comply with these provisions.

**IT IS SO ORDERED.**

---

**25.** The Court notes that the Puerto Rico legislature has recently considered a bill that would explicitly provide for mail-order pharmacies. *See* H.R. Project 1021, 13th Leg. (P.R.1997); docket no. 104, exhibit A.

**26.** National also claims that because the pharmacy laws prevent it from doing business in Puerto Rico, its First Amendment rights to commercial speech are being violated. In the discussion of National's Commerce Clause claim, the Court holds in Section 5b. of this opinion that these laws do not prevent National from doing business in Puerto Rico and therefore they do not pose an undue burden on interstate commerce. The same reasoning applies to the First Amendment claim. Because these laws do not prevent National from doing business, the Court holds that the First Amendment is similarly not implicated at this time.