**K–S PHARMACIES, INC., et al., Plaintiffs–Appellees,**

**v.**

**AMERICAN HOME PRODUCTS CORPORATION, Defendant–Appellant.**

**No. 91–3227.**

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1992.

Decided May 8, 1992.

Jane A. Naughton, David A. Melnick (argued), Milwaukee, Wis., for plaintiffs-appellees.

Scott W. Hansen, Brian D. Trexell, Reinhart, Boerner, Vandeuren, Norris & Rieselbach, Milwaukee, Wis., William J. Ruane (argued), American Home Products Corp., New York City, for defendant-appellant.

Andrew J. Pincus, Kenneth J. Jurek, Alan E. Untereiner (argued), Mayer, Brown & Platt, Bruce J. Brennan, Loretta E. Chi, Pharmaceutical Manufacturers Ass'n., Washington, D.C., for amicus curiae.

Before FLAUM, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Since 1976 Wisconsin has forbidden price discrimination in wholesale transactions in prescription drugs. Wis.Stat. § 100.31(2) provides:

> Every seller shall offer drugs from the list of therapeutically equivalent drugs published by the federal food and drug administration to every purchaser in this state, with all rights and privileges offered or accorded by the seller to the most favored purchaser, including purchase prices for similar volume purchases, rebates, free merchandise, samples and similar trade concessions. Nothing in this subsection prohibits the giving of a discount for volume purchases.

A "seller" is a person who supplies drugs for resale, § 100.31(1)(c), and a "drug" is any substance covered by § 503(b) of the federal Food, Drug, and Cosmetic Act, § 100.31(1)(a). Purchasers may obtain treble damages for price discrimination, § 100.31(3), which also may be prosecuted as a misdemeanor, § 100.26(1). Apparently the statute has been either completely effective or completely ignored, for ours is the initial suit seeking enforcement.

Three Wisconsin pharmacies and a trade association commenced this suit in state court, contending that American Home Products Corporation (AHPC) gave other customers lower prices on the same or smaller volumes of the same drugs. AHPC removed the case to federal court under the diversity jurisdiction and moved to dismiss the complaint, asserting that § 100.31 violates the Constitution in two ways: it regulates the prices of sales in interstate commerce, and it is too vague. The district court denied this motion. It certified (and we accepted) an interlocutory appeal under 28 U.S.C. § 1292(b).[1]

■ No state may require sellers to charge the same price within its borders as they charge elsewhere. Such statutes, the Supreme Court has held, assert extraterritorial jurisdiction of a kind denied to states by the "negative" or "dormant" commerce clause. *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989); *Brown–Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986). Any statute of the form "charge in this state the same price you charge outside it" carries the implied command: "Charge outside this state the same price you charge inside it." This latter, implied (but inseparable) command, the Court held, is a forbidden attempt to exercise extraterritorial power.

■ Section 100.31 does not distinguish between prices in Wisconsin and those in Oregon or Venezuela; AHPC contends that § 100.31 is unconstitutional because charging a particular price in Wisconsin constrains its actions in Alaska. The district court disagreed on statutory rather than constitutional grounds. It read § 100.31(2) to apply to sales within Wisconsin. So long as a seller charges the same price to all pharmacies in Wisconsin, it may do as it pleases in Minnesota or Micronesia.

■ AHPC says that the district judge misunderstood the statute. Our independent reading, see *Salve Regina College v.*

*Russell*, — U.S. —, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), matches that of the district judge, however. Section 100.31(2) says that the seller shall offer "to every purchaser in this state" the same price afforded to "the most favored purchaser". One staple in the interpretation of federal law is that statutes presumptively govern only conduct in the United States. E.g., *EEOC v. Arabian American Oil Co.*, — U.S. —, 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991) (collecting cases). Congress has the power to cast its net more widely but must say so. States lack any comparable power to reach outside their borders, making the presumption of exclusive domestic application even stronger.

■ What sense would it make to read a state law to affect out-of-state prices, when the upshot is invalidity? True, a federal court may not slice and dice a state law to "save" it; we must apply the Constitution to the law the state enacted and not attribute to the state a law we could have written to avoid the problem. *American Booksellers Ass'n v. Hudnut*, 771 F.2d 323, 332–34 (7th Cir.1985), affirmed without opinion, 475 U.S. 1001, 106 S.Ct. 1172, 89 L.Ed.2d 291 (1986). But we may interpret the law. *Frisby v. Schultz*, 487 U.S. 474, 483, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988). When interpreting state laws, federal courts use the same principles as state courts do. AHPC does not contend that the Supreme Court of Wisconsin reads its legislation to apply outside its borders. We could not find a parallel to *Arabian American Oil* in Wisconsin law, but neither could we find a case in which the Supreme Court of Wisconsin rejected that principle of construction. When dealing with laws having extraterritorial potential, such as tax legislation, it has endeavored to conform the legislation to limits on state power. See *Consolidated Freightways Corp. v. Wisconsin Department of Revenue*, 164 Wis.2d 764, 477 N.W.2d 44 (1991). It is all but certain that the Supreme Court of Wisconsin, if given the chance, would interpret "most favored purchaser" to

---

**1.** The district judge held that the trade association lacks standing. The association does not

contest this ruling, so it is no longer a party; we have removed its name from the caption.

mean "most favored purchaser in Wisconsin." Plaintiffs concede that § 100.31(2) does not apply to "favored" purchases out of state even when transshipment to Wisconsin follows. A pharmacy with operations in Wisconsin and Illinois may order and pay for drugs in Illinois at prices lower. than those offered in Wisconsin, shipping the drugs into Wisconsin for resale (even, plaintiffs said, instructing the seller to deliver the drugs directly to Wisconsin). Perhaps plaintiffs have conceded too much; after the abolition of the original package doctrine, see *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495 (1976), states may regulate transactions that wind up within their borders. No matter. It is enough that "the most favored purchaser" in § 100.31(2) does not refer to sales outside Wisconsin for resale outside Wisconsin.

■ Nothing remains for analysis under the balancing procedure of *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). The dormant commerce clause does not call for proof of a law's benefits, after the fashion of substantive due process, whenever the subject is trade. On the contrary, legislation regulating economic affairs is within public power unless the rules are so silly that a justification cannot even be imagined. *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980); *Vance v. Bradley*, 440 U.S. 93, 110–12, 99 S.Ct. 939, 949–50, 59 L.Ed.2d 171 (1979); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Northside Sanitary Landfill, Inc. v. Indianapolis*, 902 F.2d 521 (7th Cir.1990). Laws forbidding price discrimination have plausible justifications. A legislature might believe that a seller would reduce prices to all customers rather than abandon discounts. Economists do not share that view, thinking it more likely that the firms will curtail discounting. When the cost of a bargain for a single customer is a lower price for all, the seller may think it best to stick with the higher price. See Roger D. Blair & David L. Kaserman, *Antitrust Economics* 258–79 (1985); Herbert Hoven-

kamp, *Economics and Federal Antitrust Law* 338–54 (1985). In recent years the Supreme Court has adopted this view. E.g., *Great Atlantic & Pacific Tea Co. v. FTC*, 440 U.S. 69, 80, 99 S.Ct. 925, 933, 59 L.Ed.2d 153 (1979). Accord, United States Department of Justice, *Report on the Robinson–Patman Act* (1977). But the constitutional powers of states do not follow the leadership of the American Economics Association. *Amanda Acquisition Corp. v. Universal Foods Corp.*, 877 F.2d 496, 502, 505–09 (7th Cir.1989).

Courts demand more than hypothetical rationality of statutes only when the laws create a *differential* burden on interstate commerce. Is a person located outside the state's border worse off than one in the legislating state but otherwise similarly situated? Are interstate sales at a disadvantage relative to intrastate sales? Sellers located in Wisconsin are no better off on account of § 100.31(2) than are sellers elsewhere. All must use the same price throughout Wisconsin and may sell elsewhere at whatever price the traffic will bear. AHPC contends that Wisconsin's law has some extraterritorial effects because a price set in Milwaukee must be used in Superior; and the price in Superior will be used just across the border in Duluth, Minnesota, which is part of the same market. If Minnesota, too, forbids domestic price discrimination, the price in Duluth propagates to Minneapolis. This is a recycled argument. It has been made to, and rejected by, the Supreme Court. Maryland forbade all price discrimination in the sale of petroleum products within its borders. The Court thought a commerce clause challenge to the law worth exactly one footnote:

> Appellants argue that Maryland has actually regulated beyond its boundaries, pointing to the possibility that they may have to extend voluntary allowances into neighboring States in order to avoid liability under the Robinson–Patman Act.... But this alleged extra-territorial effect arises from the Robinson–Patman Act, not the Maryland statute.

*Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 133 n. 28, 98 S.Ct. 2207, 2218 n. 28, 57 L.Ed.2d 91 (1978). The Pharmaceutical Manufacturers Association, appearing as amicus curiae, tries a variation: suppose Minnesota were to enact a statute requiring sellers to give buyers in Minnesota the same price they extend to any branch of any firm selling in Minnesota. Then a price offered in Wisconsin to a multi-state pharmacy with stores in both Wisconsin and Minnesota must be extended to Minnesota, without the aid of the Robinson–Patman Act. How this is a strike against Wisconsin's law eludes us. The extraterritoriality comes from the (hypothetical) Minnesota law, which is *in extremis* after *Healy* and *Brown–Forman.* Wisconsin's law does not use out-of-state sales as a benchmark for any purpose. *Exxon* holds that a state may have a law of the kind Wisconsin actually enacted; that is enough for us.

Is Wisconsin's law vague? Of course it is. No statute so compact as § 100.31(2) resolves a fraction of the problems that attend any attempt to regulate price differences. Weighty treatises on the Robinson–Patman Act attest to the many subtle issues that arise. Frederick M. Rowe, *Price Discrimination Under the Robinson–Patman Act* (1962); Julian O. von Kalinowski, 4 *Antitrust Laws and Trade Regulation* (1992 ed.). One open issue in particular excites AHPC and its supporting amicus: over what time? Does § 100.31(2) ban different prices only in contemporaneous sales, or may sales months apart be matched? Plaintiffs' complaint seeks redress for price differences in sales separated by six months. If § 100.31(2) has such scope, AHPC observes, then it is unlawful for a firm to increase or reduce its prices, period. Nothing in § 100.31(2) helps a court fix the temporal scope of the bar or resolve the other questions sure to arise.

■■■ Is Wisconsin's law *unconstitutionally* vague? Of course it is not. It is no worse than the Robinson–Patman Act itself, which resolves few of the many questions (including temporal scope) so vital to implementation. See 15 U.S.C. § 13. If § 100.31(2) is unconstitutionally vague, then the entire common law is unconstitutional because courts revise this non-text as they go along, and all laws calling for "reasonable" behavior in one or another fashion are forbidden. Yet for centuries courts have thought it sufficient that specificity may be created through the process of construction. Clarity via interpretation is enough even when the law affects political speech, see *Civil Service Commission v. Letter Carriers,* 413 U.S. 548, 575–80, 93 S.Ct. 2880, 2895–98, 37 L.Ed.2d 796 (1973) (Hatch Act), or defines crimes, see *Parker v. Levy,* 417 U.S. 733, 752–57, 94 S.Ct. 2547, 2559–62, 41 L.Ed.2d 439 (1974) (provision of the Uniform Code of Military Justice punishing "conduct unbecoming an officer and a gentleman"). Section 100.31(2) sets an intelligible benchmark (no price discrimination) and leaves the details to be worked out.

■■ Section 100.31(2) is no less precise than the Sherman Act, another law providing for treble damages in private actions and criminal punishment in public ones. Long ago the Court deemed the Sherman Act sufficient, *Nash v. United States,* 229 U.S. 373, 376–78, 33 S.Ct. 780, 781–82, 57 L.Ed. 1232 (1913), and it has never questioned that conclusion. If the Sherman and Robinson–Patman Acts comport with the due process clause, so does § 100.31(2). AHPC observes that the thousands of cases interpreting these rules provide information missing for § 100.31(2), but to every law there comes a first interpretation. The Sherman Act was not unconstitutional in 1890, becoming enforceable only in 1913. It has been constitutional all along because it provides a starting place, and courts resolve disputes as they arise. Wisconsin has the entire jurisprudence of the Robinson–Patman Act from which to borrow. We assume that it will do so,[2] meaning that

---

2. Like most other states, Wisconsin uses federal antitrust rules as the norms when interpreting state laws affecting competition, including those addressing price discrimination. E.g., *Jauquet Lumber Co. v. Kolbe & Kolbe Millwork Co.,* 164 Wis.2d 689, 476 N.W.2d 305 (App.1991); *Obstet-*

a seller is free to change its prices as much and as often as it wants, provided it charges the same price to all competing customers at the same time. Cf. *A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1406–08 (7th Cir.1989). Assertions in the complaint about sales months apart accordingly fail to state a claim on which relief may be granted, but a litigant's misunderstanding does not make a law unconstitutionally vague.

AFFIRMED.

*rical & Gynecological Associates of Neenah, S.C. v. Landig,* 129 Wis.2d 362, 384 N.W.2d 719 (App.

