NATIONAL PHARMACIES, INC., Plaintiff, Appellee,

v.

Carmen FELICIANO–DE–MELECIO, Honorable Carmen de Melecio as Secretary of Health of Puerto Rico, Department of Health of the Commonwealth of Puerto Rico, acting in her official capacity; Puerto Rico Department of Justice; Defendants.

College of Pharmacists of Puerto Rico; Association of Pharmacy Owners of Puerto Rico, Inc.; Defendants, Appellants.

No. 99–1803.

United States Court of Appeals, First Circuit.

Heard March 9, 2000.

Decided Aug. 2, 2000.

Johanna Emmanuelli–Huertas, with whom Pedro Ortiz–Alvarez and The Law Offices of Pedro Ortiz Alvarez, PSC were on brief, for appellants.

Jay A. García–Gregory, with whom Fiddler, González & Rodríguez was on brief, for appellee.

Jesús E. Cuza, Ina M. Berlingeri–Vincenty and Goldman Antonetti & Córdova, P.S.C. on brief for Retired Persons Services, Inc., amicus curiae.

David C. Indiano, Alexander H. Bopp and Indiano, Williams & Weinstein–Bacal on brief for Pharmaceutical Care Management Association, amicus curiae.

Before TORRUELLA, Chief Judge, LIPEZ, Circuit Judge, and PIERAS,* Senior District Judge.

TORRUELLA, Chief Judge.

Before the Court is a dispute over the applicability of the Pharmacy Act of Puerto Rico to mail-order pharmacy services

---

* Of the District of Puerto Rico, sitting by designation.

based outside of Puerto Rico that supply pharmaceuticals to customers within Puerto Rico. The district court held that such mail order pharmacy services are not forbidden by the Act and entered judgment in favor of appellee National Pharmacies, Inc. against appellants College of Pharmacists of Puerto Rico ("the College") and Association of Pharmacy Owners of Puerto Rico, Inc. ("the Association"), as well as against the Puerto Rico Secretary of Health, who has not appealed. We affirm the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Overview of Mail-order Pharmacy*

"Mail-order" pharmacy transactions vary from purchases at the corner drugstore in one obvious way—they utilize the mails, or some comparable carrier, to physically deliver the pharmaceuticals to the customer. A typical transaction might proceed as follows: A person receives a prescription from his or her treating physician. Rather than taking this prescription in person to a local pharmacy, the person sends the prescription by mail to a pharmacist located elsewhere. The receiving pharmacist then reads the prescription and performs whatever allergy and drug-interaction checks may be necessary, based on the pharmacist's professional knowledge and on the medical history provided by the consumer, to establish that the prescription is safe. If satisfied that all is in order, the pharmacist will dispense the drugs according to the prescription and send them by mail or comparable carrier directly to the consumer. It is thus possible for the consumer to obtain needed medication without ever leaving his or her home.

Although large-scale mail-order pharmacies such as that operated by appellee National Pharmacies have gained prominence fairly recently, the practice of providing pharmaceuticals by mail or other courier has existed for at least a century and was particularly prevalent in rural areas where distances between pharmacists often made in-person dispensing of medications impractical.[1] The precursor of today's large-scale mail-order pharmacy services came after World War II, when the United States Veterans Administration established a mail-order pharmacy program to provide prescription medications to veterans returning from the war. The private sector followed suit, and, following the lead of groups such as the American Association of Retired Persons, and its AARP Pharmacy Service, mail-order pharmacy services have become a significant provider of prescription drugs to older consumers as well as to low-income, remote rural, disabled, or home-bound individuals. For example, according to its amicus brief, the AARP Pharmacy Service has delivered some two-hundred and twenty-five million prescriptions by mail to individuals in all fifty states, the District of Columbia, Puerto Rico, the Virgin Islands, and Guam. Some seventeen thousand AARP members in Puerto Rico use the AARP Pharmacy Service, amounting to over one hundred thousand prescriptions filled annually.

### 2. *The Present Dispute*

The present controversy was sparked when appellee National Pharmacies entered into a contract with Cruz Azul de Puerto Rico ("Blue Cross") to provide prescription medications by mail to Blue Cross insureds who choose to use a mail-service option for covered pharmaceutical purchases. National is a licensed pharmacy under the laws of New Jersey and employs New Jersey-licensed pharmacists to fill prescriptions; it has no office in Puerto Rico, nor is any of its pharmacists a member of the appellant College of Pharmacists.

---

1. We acknowledge the useful assistance provided by the briefs of amici curiae, particularly in providing a broader factual context with- in which to evaluate the issues raised on appeal.

In 1994, apparently in response to concerns raised by appellants, the Secretary of Health of Puerto Rico, upon the advice of her legal staff, sent letters to appellants stating her conclusion that the Pharmacy Act of Puerto Rico forbade mail-order pharmacy services and inviting pharmacists and pharmacy owners to aid her in enforcing the Act by filing administrative complaints if they became aware of any noncompliance. Both the College and the Association accepted the Secretary's invitation and filed a complaint with the Puerto Rico Department of Health, as well as an action in local court, seeking injunctive relief preventing National and various other entities from dispensing prescription drugs by mail to Puerto Rico residents.

In response, National filed suit in the United States District Court for the District of Puerto Rico seeking declaratory and injunctive relief against the Secretary of Health as well as against the College and the Association.[2] National claimed that the Pharmacy Act violated the Commerce Clause and the First Amendment to the United States Constitution. We describe the particular sections challenged by National, and the district court's decision, in the following section.

After a short period of discovery, the parties agreed that the case would be submitted to the district court for a decision based on a record stipulated to by all parties. The parties thereafter submitted a comprehensive Stipulation of Facts.[3] The Stipulations described National's operating procedures at length and stated explicitly that "the defendants, to the best of their knowledge, have no evidence at this time that the practice of pharmacy by National, generally referred to as mail service pharmacy, has caused any harm or injury to the health and safety of patients in Puerto Rico."

Pending the decision of the district court, the administrative proceedings before the Department of Health were stayed to await the district court's decision. The local court action was dismissed by the agreement of the parties, also in deference to the district court's resolution of the case.

### 3. District Court's Decision

On March 31, 1999, the district court issued a decision and declaratory judgment holding that the challenged provisions of the Pharmacy Act were not applicable to National's mail-order pharmacy service. See National Pharmacies, Inc. v. De Melecio, 51 F.Supp.2d 45 (D.P.R.1999). In addition to rejecting standing and preemption arguments that have not been pressed on appeal, the court made several rulings that appellants now contend were in error.

First, the district court rejected the Secretary of Health's argument that it should abstain from deciding the case in deference to local proceedings under the abstention doctrine articulated in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In addition to recognizing that "[a]bstention is an 'extraordinary and narrow exception' to a federal court's duty to hear a case properly before it," National Pharmacies, 51 F.Supp.2d at 52 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)), the court also noted that all related local proceedings had been stayed or dismissed in deference to the federal court, see id. at 53. The court therefore concluded that abstention would cause unnecessary delay and was not appropriate in this case. See id.

Second, the district court rejected appellants' contention that the practice of pharmacy is a profession, rather than commerce, and therefore not subject to the

---

2. The Attorney General of Puerto Rico also entered a special appearance in the case to defend the constitutionality of the statute.

3. The defendants objected to some stipulations, but the objections were denied by the district court, and that decision is not challenged on appeal.

constraints of the Commerce Clause. Recognizing the broad power of states to regulate the practice of professions, as well as the police power of the states to legislate to protect the health and safety of their citizens, the court determined that Puerto Rico had a legitimate interest in regulating the practice of pharmacy within its borders. *See id.* at 54–55. However, the court concluded that, even when acting pursuant to a legitimate interest, the states are limited by the Commerce Clause. *See id.* at 55. The court cited numerous precedents for Commerce Clause analysis of professions, and also emphasized the treatment of professions as part of interstate commerce in the context of antitrust law. *See id.* Because the defendants had cited no authority to contradict those precedents or otherwise support their contention that the regulation of pharmacy need not comply with the strictures of the Commerce Clause, the court rejected the argument that the Pharmacy Act was exempt from Commerce Clause scrutiny.

The district court next considered National's claims that the Pharmacy Act unconstitutionally burdened interstate commerce and violated the freedom of speech protected by the First Amendment. The court reviewed the standard for considering Dormant Commerce Clause challenges, noting that the Constitution "prohibits states from regulating in a manner that would discriminate against or unduly burden interstate commerce and would thereby impede free trade in the national marketplace." *Id.* at 56. The court further noted that it would view with suspicion state regulations which require business operations to be performed in-state when they could more efficiently be performed elsewhere, and also that state regulations attempting to control commercial activity wholly outside the state's borders run afoul of the Commerce Clause. *See id.* at 56–57.

The district court then proceeded to address the specific sections of law challenged by National.[4] In particular, the court considered National's contention that sections 396, 401, and 402 of the Pharmacy Act[5] unconstitutionally burden interstate commerce by requiring

> that a prescription for a Puerto Rico consumer may only be filled by a pharmacist residing in the town where his pharmacy is located; that a pharmacy serving Puerto Rico must be managed by a pharmacist who must be present at the pharmacy for a specified number of hours per week; and that any pharmacy serving Puerto Rico consumers be licensed by the Secretary of Health and subject to inspections by the Secretary.

*Id.* at 57.

Rather than launch immediately into the standard Commerce Clause analysis, how-

---

**4.** The court first rejected, as insufficiently developed, National's arguments that sections 385 and 401 of the Pharmacy Act, and section 433 of the act establishing the College, impermissibly burdened interstate commerce by requiring membership in the College and registration with the Board of Pharmacy of Puerto Rico. *See id.* at 57 & n. 23. This aspect of the judgment is not challenged on appeal.

**5.** Section 396 states:

> Every establishment devoted, or which may hereafter be devoted, to the sale of medicines, chemical or pharmaceutical products, patent medicines, drugs wholesale or retail, or manufacture of medicines shall have to apply to the Secretary of Health for a license and the Secretary of Health shall have power to issue same after inspection

of the establishment, provided the establishment, in the discretion of the Secretary of Health, meets the purposes and requirements of this chapter.

P.R. Laws Ann. Tit. 20, § 396.

Section 401 reads: "In all cases where a pharmacist is practicing his profession he shall be a member of the College of Pharmacists of Puerto Rico, of age, shall manage in person the establishment under his supervision, and shall reside in the town in which he is practicing." *Id.* § 401.

Section 402 requires that every pharmacy "shall be managed personally by a duly registered pharmacist authorized to practice his profession in the Commonwealth of Puerto Rico." *Id.* § 402. Section 402 also limits the number of hours during which the supervising pharmacist may be away from his or her pharmacy. *See id.*

ever, the court paused to note the federalism concerns that are presented whenever a federal court is asked to judge the constitutionality of a state statute, and particularly when the federal court does not have the benefit of a state court ruling on the particular aspect being challenged. *See id.* at 58. The court turned for guidance in this circumstance to the decision of the United States Court of Appeals for the Seventh Circuit in *K–S Pharmacies v. American Home Products*, 962 F.2d 728 (7th Cir.1992), in which the court narrowly construed a Wisconsin statute to avoid a finding that Wisconsin was unconstitutionally regulating outside its borders. Drawing an analogy to *K–S Pharmacies*, the district court concluded that

> [a] reading of these statutes to hold that the Puerto Rico Secretary of Health may inspect out-of-state pharmacies or that a pharmacist in another state must reside in the town where he is practicing or that an out-of-state pharmacist may only be absent from his pharmacy during the times set forth in section 402 would read these sections to be an unconstitutional attempt to regulate commerce outside the borders of Puerto Rico.... Accordingly, the Court holds that these provisions are not applicable to the management and operation of National's business in New Jersey.

*Id.* at 59. Because the challenged provisions of sections 396, 401, and 402 of the Act did not apply to National and could not be used to prohibit National from serving customers in Puerto Rico, the court concluded that it need not reach National's constitutional claims under the Commerce Clause and the First Amendment. *See id.* at 59, 61 n. 26. Although disavowing any judgment as to what type of regulation of mail-order pharmacy services would be best adopted by the Puerto Rico legislature, the court noted that the current lack of regulation (given the court's interpretation of the Pharmacy Act) could be easily remedied, as many other states have acted to regulate the practice of mail-order pharmacy. *See id.* at 60–61. In the meantime,

the court stated, National could seek a license from the Secretary of Health and registration with the Board of Pharmacy, and such license and registration could not be denied on the grounds of noncompliance with sections 396, 401, and 402 of the Act. *See id.* at 60, 61.

Following the entry of declaratory judgment, the College and the Association filed this appeal. The Secretary of Health and the Attorney General of Puerto Rico have not challenged the district court's ruling.

## II. LAW AND APPLICATION

On appeal, the College and the Association argue (1) that the district erred in reading the Pharmacy Act not to apply to National's mail-order pharmacy service; (2) that the court erred in avoiding a ruling on the Commerce Clause issue; and (3) that the court erred in not referring the issues of statutory interpretation to the Supreme Court of Puerto Rico. We disagree, and we affirm the judgment of the district court.

### 1. *Referral to the Puerto Rico Supreme Court*

We dispose of this issue first because it is the easiest. Appellants combine their prior abstention arguments with an argument that the district court should have certified to the Puerto Rico Supreme Court the issue of the Pharmacy Act's applicability. This restyled argument is no more persuasive than the bare abstention argument.

First, as the district court noted, all related local proceedings had been stayed or dismissed in deference to the district court's adjudication of the issues before it. A federal court cannot be expected to defer to local proceedings that either no longer exist or in which the decisionmakers have clearly indicated their preference that the federal court act. Thus, the district court correctly declined to abstain under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

■ Second, with respect to the certification of the Pharmacy Act's interpretation to the Puerto Rico Supreme Court, such referral in all likelihood would have been ineffective and caused needless delay.[6] Although a statutory interpretation by the highest local court could have facilitated the district court's analysis, it would not have been dispositive of National's lawsuit, which was premised on federal constitutional claims. Furthermore, the Puerto Rico Supreme Court has indicated that it does not favor certifications from the federal courts where the referred issue involves federal constitutional considerations on which the supreme court's opinion would appear to be merely advisory. *See* Rule 27 of the Rules of the Supreme Court of Puerto Rico, P.R. Laws. Ann. tit. 4, App. I–A; *Cuesnongle v. Ramos*, 835 F.2d 1486, 1493 (1st Cir.1987) (discussing *Cuesnongle v. D.A.C.O.*, 119 P.R. Offic. Trans. 493, 119 D.P.R. 457, 1987 WL 448283 (P.R. 1987), and *Pan Am. Computer Corp. v. Data General Corp.*, 112 P.R. Offic. Trans. 983, 112 D.P.R. 780, 1982 WL 210608 (P.R. 1982)). Given the district court's analysis of the Pharmacy Act's applicability to mail-order pharmacy services, in which we concur, the district court correctly concluded that certification to the Supreme Court of Puerto Rico would likely inhibit, rather than further, the efficient administration of justice.

### 2. *The District Court Properly Construed the Pharmacy Act*

We turn next to appellants' principal claim of error, which is that the district court improperly construed sections 396, 401 and 402 of the Pharmacy Act to not apply to National's mail-order pharmacy operations. Although appellants' brief goes on at length about different approaches to statutory construction, their argument can be easily summarized. According to appellants, the district court's interpretation of the statute was irrational because it unduly emphasized the literal meaning of the words of the Act and gave undue weight to omissions in the statute. They argue that

> [t]he Court placed so much emphasis in avoiding the constitutional attack to the Pharmacy Act, that it rendered a decision that ultimately makes the Pharmacy Act an absurd piece of legislation. If this reading stands, the Pharmacy Act would exempt from all regulation those pharmacists that practice the profession by mail. Moreover, the Act would favor non-resident pharmacists over resident pharmacists. The reading completely disregards the ultimate purpose of the act, to safeguard the citizens' health, to control who has and who dispenses medications to Puerto Rican citizens and to safeguard the patients' rights of communication and counseling by a pharmacy professional.

Appellants' Brief at 16.

■ As an initial matter, we note that the district court was correct in its endeavor to construe the statutory provisions in a way that would avoid constitutional difficulties. Although, as the court noted, the federal courts are somewhat more constrained in the use of "narrowing" constructions when interpreting state laws, *see National Pharmacies*, 51 F.Supp.2d at 58 (and cases cited therein), federal courts are nevertheless instructed to render interpretations of state law by using the same methods that the state court would use, *see id.* (and cases cited therein), including the principle that statutes should

---

6. Appellants complain that the district court took several years to decide this case on the stipulated record submitted by the parties. Although we are sympathetic to all litigants' desire for the swiftest practical justice, we do not find the district court's delay in this case outrageous. The record shows that the Puerto Rico legislature has for some time been considering a bill that would have explicitly regulated mail-order pharmacy and thus likely mooted this litigation. Under the circumstances, the district court's preference to let the legislative branch address this issue without judicial intervention was understandable and prudent, even though the legislature ultimately failed to act.

ordinarily be given a constitutional interpretation where fairly possible, *see Arizonans for Official English v. Arizona*, 520 U.S. 43, 78, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). Furthermore, before determining how the Puerto Rico Supreme Court would most likely interpret the Pharmacy Act, the district court was careful to determine that the Supreme Court of Puerto Rico had itself recognized that a state's regulatory jurisdiction is generally limited to persons and things located within its borders. *See National Pharmacies*, 51 F.Supp.2d at 59. Such care by the district court ensures that the federal court's reading of a state statute is as harmonious as possible with existing state law, and it thus protects the respectful balance mandated by our federal system. Under the circumstances, we think the district court approached its interpretative task appropriately.

■ We also conclude that the district court reached the correct result in its interpretation of the Pharmacy Act's applicability. First, the court's reliance on and analogy to the Seventh Circuit's decision in *K–S Pharmacies*, 962 F.2d at 730, was well founded. Appellants fail to even mention, much less distinguish, that case in their brief, and for good reason. In that case, the district court was faced with a state law of questionable constitutionality if given a broad interpretation, and the court straightforwardly utilized a plain reading of the statute and standard interpretative canons to achieve a result that left the statute intact without violating the Commerce Clause. The issues and analysis were strikingly similar to this case, and the district court was justified in drawing analogies.

Even were we without the benefit of the *K–S Pharmacies* decision, however, our analysis would be uncomplicated and the result the same. Most of the language of sections 396, 401, and 402 of the Pharmacy Act make sense only when read to apply exclusively within Puerto Rico.[7] Especially in light of the Act's passage in 1945, before the development of large-scale interstate mail-order pharmacy services such as that conducted by National, the most reasonable conclusion is that the Act was not intended to and does not regulate interstate mail-order pharmacy. Appellants, of course, would have us read such omission as a *prohibition* of mail-order pharmacy, apparently under the theory that everything not permitted by the Act is necessarily prohibited. But appellants have it all backwards. Notwithstanding the recognized authority of the states to regulate the professions and to regulate in areas of public health, the general rule is and must be that a particular activity is unregulated until the state takes some affirmative step to regulate it. *See, e.g., Hughes v. Superior Court*, 339 U.S. 460, 468, 70 S.Ct. 718, 94 L.Ed. 985 (1950) ("The policy of a State may rely for the common good on the free play of conflicting interests and leave conduct unregulated. Contrariwise, a State may deem it wiser policy to regulate.").

Like the district court, we note that, although Puerto Rico has not acted to regulate mail-order pharmacy to date, it has the power to do so. Nearly four-fifths of the states of the Union have acted to regulate mail-order pharmacy, utilizing a number of distinct approaches. *See National Pharmacies*, 51 F.Supp.2d at 60 (listing laws in thirty-eight jurisdictions). Contrary to the insinuation of appellants in their claims of err, therefore, it is clear that the district court's interpretation of the statute does not "exempt" mail-order pharmacy services from regulation; it

---

7. To give just one example, section 401 begins: "In all cases where a pharmacist is practicing his profession he shall be a member of the College of Pharmacists of Puerto Rico...." Clearly, the provision was not intended to, and cannot have the effect of, requiring pharmacists to be members of the College in order to practice pharmacy in New Jersey, Illinois, or other places outside of Puerto Rico. Although the provision includes no explicit limitation of its effect to activities occurring within Puerto Rico, such limitation is necessarily implicit.

merely recognizes that the Puerto Rico legislature has yet to act in this field.

Nor have appellants otherwise demonstrated how the district court's interpretation renders the Pharmacy Act "absurd." It is not at all clear from the district court's decision that, as appellants claim, the Pharmacy Act now "favors" nonresident pharmacists over resident pharmacists;[8] and, even if it did, such result might be against the economic interests of the College and the Association, but it would not necessarily be absurd. Nor have the appellants provided any support for their assertion that the district court's interpretation disregard's the Act's underlying concern for the safety of Puerto Rican residents. Notwithstanding the appellants' rhetoric, the record in this case demonstrates, at worst, that there have been no demonstrable negative effects on health from mail-order pharmacy services. Rather, the record seems to indicate that such services offer substantial benefits to at least some individuals who need pharmaceuticals but are unable to avail themselves conveniently of the traditional corner-store pharmacy services regulated by the Pharmacy Act.

In sum, we find no fault with the district court's interpretation of the Pharmacy Act. That interpretation is in line with the plain language of the statute, as well as with traditional principles of statutory construction, and we adopt and affirm it.

### 3. *We Need Not Reach the Constitutional Issues*

Given our conclusion that sections 396, 401, and 402 do not apply to National's mail-order pharmacy operations, we agree with the district court that there is no need to address the constitutional issues.[9] No argument has been made that intra-state application of the Pharmacy Act might somehow unduly burden interstate commerce or violate First Amendment or other constitutional rights, and thus there remains no constitutional controversy for our consideration.

### III. CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

**Affirmed.**

---

8. Because National has no office in Puerto Rico, we need not decide whether mail-order pharmacy services operating *within* Puerto Rico are regulated by the Pharmacy Act.

9. In addition to the Commerce Clause and First Amendment challenges made by National in the district court, amici curiae have also suggested that a broad reading of the Pharmacy Act would violate the Privileges and Immunities Clause of the Constitution.