CT-2000-2                                                                      1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carlos Romero, hijo<br>    Demandante<br><br>       v.<br><br>Colegio de Abogados de Puerto Rico,   et al.<br>    Demandados | Certiorari<br><br>2001 TSPR 86 |

Número del Caso: CT-2000-2


Fecha: 12/junio/2001


Abogados de la Parte Demandante:
                          Lcdo. Jorge Pizarro García
                          Lcdo. Roberto G. Post


Abogados de la Parte Demandada:
                          Lcdo. Carlos A. Rodríguez Vidal
                          Lcdo. Ricardo L. Ortiz Colón


Materia: Certificación

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos Romero, hijo

    Demandante

           v.                              CT-2000-2

Colegio de Abogados de

Puerto Rico, et al.

    Demandados

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 12 de junio de 2001.

Nos corresponde determinar, en un proceso de certificación referido por la Corte de los Estados Unidos para el Distrito de Puerto Rico ("Corte de Distrito"), si el Colegio de Abogados de Puerto Rico está autorizado a compeler a sus miembros a adquirir un seguro de vida a través del Colegio como parte del pago de la cuota de membresía a la institución. Conforme a las leyes del Estado Libre Asociado y a la jurisprudencia y reglamentación promulgada por este Tribunal, determinamos que existe dicha autoridad legal.

I

Para explicar la procedencia del recurso y los méritos de la cuestión planteada, comenzaremos

haciendo un breve recuento procesal de la presente acción judicial.

El Lcdo. Carlos A. Romero, hijo, abogado admitido a la práctica jurídica en el Estado Libre Asociado de Puerto Rico, impugnó ante la Corte de Distrito la asignación por el Colegio de Abogados de una porción de la cuota de membresía para la compra de un seguro de vida para los miembros de dicha asociación. Alegó el licenciado Romero que la asignación de estos fondos a la adquisición del seguro de vida compulsorio constituía una violación a su derecho a la libre expresión y asociación, protegidos por la Primera Enmienda a la Constitución de los Estados Unidos.

La Corte de Distrito determinó que no existía violación a los derechos del licenciado Romero, pues, por medio del sistema de seguro de vida compulsorio, el Colegio de Abogados no había expresado un mensaje de contenido ideológico. No estaba en juego, pues, un interés protegido por la Primera Enmienda a la Constitución federal.

El licenciado Romero acudió entonces a la Corte de Apelaciones de los Estados Unidos para el Primer Circuito ("Corte de Circuito"), que anuló (vacated) la determinación de la Corte de Distrito al concluir, a la luz de la jurisprudencia federal más reciente, que ciertas actividades llevadas a cabo por una entidad de membresía compulsoria podrían ser objetables irrespectivamente de su contenido ideológico, si no corresponden a los fines o propósitos de la organización. La Corte de Circuito concluyó, sin embargo, que antes de entrar a discutir la constitucionalidad de la obligatoriedad del seguro de vida del Colegio, era necesario presentar una certificación ante nos en torno a la autoridad legal de la organización para compeler la adhesión al seguro, a la luz del ordenamiento puertorriqueño y el poder de este Tribunal de reglamentar la profesión jurídica en Puerto Rico. Atendiendo este mandato, la Corte de Circuito ordenó a la Corte de Distrito que nos refiriera la siguiente interrogante:

> ¿Está autorizado el Colegio de Abogados de Puerto Rico a compeler a sus miembros a adquirir un seguro de vida a través del Colegio como condición de membresía a la institución?[1]

La controversia referida, en esencia, requiere que determinemos si, conforme a las leyes y reglamentos del Estado Libre Asociado de Puerto Rico, el Colegio de Abogados puede asignar una parte de la cuota de membresía pagada por un colegiado a la compra de un seguro de vida para todos los miembros de la institución.

Ordenamos a las partes someter alegatos a favor de sus respectivas posiciones. Contando con sus comparecencias, procedemos a resolver.

---

[1] "**Is the Colegio de Abogados de Puerto Rico authorized to compel members to purchase life insurance coverage through the Colegio as a condition of membership in the bar of Puerto Rico?**". **Romero** v. **Colegio de Abogados**, **204 F3d 291, 305 (2000).**

II

Mediante el proceso de certificación interjurisdiccional, en un caso como el de autos, una corte federal puede someter a un tribunal estatal una interrogante sobre una controversia jurídica no resuelta en el derecho del estado. Pan Ame. Comp. Corp. v. Data Gen. Corp., 112 D.P.R. 780, 784-85 (1982). Este mecanismo opera de forma análoga en los estados federados y en Puerto Rico, aquí al amparo de la Regla 53.1(f) de Procedimiento Civil y la Regla 25 del Reglamento de este Tribunal.

En recientes y reiteradas ocasiones hemos acogido la disposición que ha demostrado el foro federal al recurrir ante este Tribunal mediante el mecanismo de certificación al enfrentar controversias no resueltas en el derecho puertorriqueño. Ocasio Juarbe v. Eastern Airlines, Inc., 125 D.P.R. 410, 415-16 (1990), Medina & Medina v. Country Pride Foods, Ltd., 122 D.P.R. 172, 180-82 (1988). Hemos hecho constar que el respeto que las cortes federales manifiesten ante nuestro acopio jurídico contribuye a mejorar las relaciones entre la jurisdicción federal y la puertorriqueña ya que, constitucionalmente, es al Tribunal Supremo de Puerto Rico a quién corresponde la autoridad de interpretar las leyes y la Constitución del Estado Libre Asociado.

Así lo reconoció la Corte Suprema de los Estados Unidos en el caso de Fornaris v. Ridge Tool Co., 400 U.S. 41, 43-44 (1970), donde se ordenó a la Corte de Distrito que se abstuviera de resolver la constitucionalidad de una ley puertorriqueña hasta tanto este Tribunal hubiere tenido la oportunidad de interpretar el estatuto. Se extendió así a Puerto Rico la doctrina de abstención en materia de derecho estatal enunciada antes en England v. Medical Examiners, 375 U.S. 411, 415-16 (1964). Ver además Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico, 478 U.S. 328 (1986), Calero-Toledo v. Pearson Yatch Leasing Co., 416 U.S. 663 (1974).

En reiteradas ocasiones la aplicabilidad de esta doctrina ha sido confirmada por la Corte de Apelaciones para el Primer Circuito, Cuesnongle v. Ramos, 835 F.2d 1486, 1495 (1st Cir. 1987), Romany v. Colegio de Abogados de Puerto Rico, 742 F.2d 32, 40 (1st Cir. 1984), García v. Friesecke, 597 F.2d 284, 289 (1st Cir. 1979), Pagán Torres v. Negrón Ramos, 578 F.2d 11, 14 (1st Cir. 1978), Díaz González v. Colón González, 536 F.2d 453, 458 (1st Cir. 1976), así como la Corte de los Estados Unidos para el Distrito de Puerto Rico, Reifer-Mapp v. 7 Maris, Inc., 830 F.Supp. 72, 79 (D.Puerto Rico, 1993), Corp. Insular de Seguros v. Garcia, 680 F.Supp. 476, 482 (D.Puerto Rico, 1988), American Eutectic Welding Alloys Sales Co., Inc. v. García-Rodríguez, 353 F.Supp. 850 (D.Puerto Rico, 1973), Montañez v. Colegio de Técnicos de Refrigeración y Aire Acondicionado de Puerto Rico, 343 F.Supp. 890, 894 (D.Puerto Rico, 1972). Véase también Stephen Breyer, "The Relationship Between the Federal Courts and the Puerto Rico Legal System", 53 Rev. Jur. U.P.R. 307, 315 (1984).

En cumplimiento de nuestra labor interpretativa, atendemos los méritos de la presente solicitud de certificación.

A

Los requisitos para la procedencia de un recurso de certificación, expuestos detalladamente en nuestra opinión en Pan Ame. Comp. Corp. v. Data Gen. Corp., supra, están también incorporados en nuestro Reglamento. Reza, a estos efectos, la Regla 25, 4 L.P.R.A. Ap. XXI-A R. 25:

> Este Tribunal podrá conocer de cualquier asunto que le fuere certificado por […], un Tribunal de Distrito de los Estados Unidos de América, […], cuando así lo solicite cualesquiera de dichos tribunales, **de existir ante el tribunal solicitante cualquier asunto judicial en el que estén implicadas cuestiones de derecho puertorriqueño que puedan determinar el resultado del mismo, y respecto al cual, en la opinión del tribunal solicitante, no existan precedentes claros en la jurisprudencia de este Tribunal.** (Énfasis suplido).

También por disposición reglamentaria, se excluye expresamente la autoridad de este Tribunal para expedir una certificación en casos en que "la cuestión planteada sea mixta por incluir aspectos de derecho federal, y/o de derecho estatal del tribunal solicitante, y aspectos del derecho local de Puerto Rico, que deba ser resuelta por el tribunal solicitante." Véase Reglamento del Tribunal Supremo de Puerto Rico, Regla 25(b), 4 L.P.R.A. Ap. XXI-A R.25(b).

Al atender la cuestión referida por la Corte de Distrito debemos, ante todo, determinar si la contestación que hemos de ofrecer conllevaría abordar aspectos de derecho federal. Entendemos que no, ya que las preguntas referidas por la Corte de Distrito se refieren específica y exclusivamente a cuestiones de derecho puertorriqueño. A base de los criterios ya expuestos en nuestra jurisprudencia, procede el presente recurso de certificación. Veamos.

B

Aunque el pleito que da lugar a la presente certificación impugna la adquisición del referido seguro de vida compulsorio al amparo de la Constitución de los Estados Unidos, la cuestión certificada se refiere, según expresamente señalado en la sentencia de la Corte de Circuito, a la interpretación de leyes y reglamentos del Estado Libre Asociado de Puerto Rico.

Al ordenar la certificación —cuestionando la autoridad del Colegio de Abogados de Puerto Rico para compeler a sus miembros a comprar un seguro de vida a través del Colegio como parte de la cuota de membresía a la institución— la Corte de Circuito dividió sus inquietudes en cuatro (4) asuntos específicos, Romero v. Colegio de Abogados, 204 F3d 291, 305:

(1) Si el inciso (h) del Art. 2 de la Ley del Colegio de Abogados de Puerto Rico, 4 L.P.R.A. 773(h) autoriza y esta institución a compeler a sus miembros a comprar un seguro de vida a través del Colegio como parte de la cuota de membresía a la institución;

(2) Si, de interpretarse el referido inciso de ese modo, el Tribunal Supremo de Puerto Rico habrá de validar esta interpretación, a la luz de su poder inherente de

reglamentar la profesión. <u>Ex parte Jiménez Sanjurjo</u>, 55 D.P.R. 54 (1939); <u>Colegio de Abogados</u> v. <u>Schneider I</u>, 112 D.P.R. 540, 546 (1982).

(3)  Si la adquisición del seguro de vida compulsorio está autorizada por el Reglamento del Tribunal Supremo de Puerto Rico y las disposiciones aprobadas por este cuerpo en <u>Colegio de Abogados</u> v. <u>Schneider II</u>, 117 D.P.R. 504 (1986), que crean la Junta Revisora de las Actividades del Colegio de Abogados;

(4)  Si alguna disposición de la Constitución del Estado Libre Asociado de Puerto Rico relativa a los derechos individuales tiene injerencia en esta controversia.

Consciente de las limitaciones reglamentarias y jurisprudenciales que impone nuestro ordenamiento, la Corte de Circuito circunscribió sus preguntas al ámbito del derecho puertorriqueño; así las certificó, a su vez, la Corte de Distrito. No hemos, pues, de abordar la aplicabilidad al asunto de marras de la reciente jurisprudencia de la Corte Suprema de los Estados Unidos, citada por la Corte de Circuito.

Se evidencia en nuestras expresiones en <u>Colegio de Abogados</u> v. <u>Schneider I</u>, supra, 552, y <u>Colegio de Abogados</u> v. <u>Schneider II</u>, supra 521-22, que —en cuanto a los derechos constitucionales reiteradamente discutidos en controversias similares a ésta— las cláusulas aplicables de la Constitución del E.L.A. y la de los Estados Unidos son análogas. No habiendo cláusula constitucional aplicable al presente caso sin equivalencia en la Constitución de los Estados Unidos, nos abstenemos de afrontar una interpretación constitucional. <u>Pan Ame. Comp. Corp</u>. v. <u>Data Gen. Corp</u>., supra, 794; <u>His Excellency Vicente Cuesnongle</u> v. <u>Ramos</u>, 119 D.P.R. 457, 466 (1987), Op. Conc. Hernández Denton. Hemos entonces de contestar la cuestión certificada con referencia a las primeras tres interrogantes expuestas por la Corte de Circuito.

### III

La Ley Núm. 43 del 14 de mayo de 1932, 4 L.P.R.A. sec. 771, et seq., consigna la funciones del Colegio de Abogados de Puerto Rico en dos artículos. El primero, Art. 13, 4 L.P.R.A. sec. 772, enumera cinco (5) cargos deontológicos de la institución. Dichos deberes son categóricos, i.e. deben cumplirse de manera obligatoria, independientemente de los demás proyectos, políticas o empresas que el Colegio lleve a cabo, pues son la razón misma para la existencia de la institución. Reza el Art. 13:

> El Colegio de Abogados de Puerto Rico tendrá como obligaciones las siguientes:

(1)  cooperar al mejoramiento de la administración de justicia;

(2)  evaluar los informes y consultas que el Gobierno le reclame;

(3)  defender los derechos e inmunidades de los abogados, procurando que éstos gocen ante los tribunales de la libertad necesaria;

(4)  promover las relaciones fraternales entre sus miembros, y

(5)  sostener una saludable y estricta moral profesional entre los asociados. 4 L.P.R.A. sec. 772.

El Art. 2, 4 L.P.R.A. sec. 773, a su vez, enumera las facultades del Colegio. Contrario a sus deberes, que son mandato ineludible de la institución, las facultades del Colegio de Abogados constituyen poderes discrecionales —expresamente autorizados por la Asamblea Legislativa y reiteradamente validados por este Tribunal— que facultan, pero no obligan, al Colegio a realizar ciertas actividades. "Bajo nuestro régimen jurídico, es evidente que el Colegio de Abogados de Puerto Rico puede dedicarse a toda actividad autorizada por la Asamblea Legislativa de Puerto Rico o por este Tribunal que esté racionalmente vinculada a los propósitos expresados en la Ley Núm. 43 ó en la orden que este Tribunal emitiese en su día, si así llegara a determinarlo a petición de parte o a iniciativa propia." Colegio de Abogados v. Schneider I, supra, 551.

No cabe duda alguna que "la creación de montepíos, sistemas de seguro y fondos especiales" por parte del Colegio de Abogados ha sido autorizada por la Asamblea Legislativa. En lo pertinente al caso de autos, reza el Art. 2, 4 L.P.R.A. sec. 773:

> El Colegio de Abogados tendrá facultad:
>
> […]
>
> (h)     Para proteger a sus miembros en el ejercicio de la profesión, y, mediante la creación de montepíos, sistemas de seguro y fondos especiales, o en cualquier otra forma, socorrer a aquellos que se retiren por inhabilidad física o avanzada edad y a los herederos o a los beneficiarios de los que fallezcan.
>
> (i) Para ejercitar las facultades incidentales que fueren necesarias o convenientes a los fines de su creación y que no estuvieren en desacuerdo con este Capítulo.

Para el cumplimiento de sus deberes y el ejercicio de sus facultades, el Colegio de Abogados se nutre del cobro de cuotas de membresía, autorizado por el Art. 9 de la Ley, 4 L.P.R.A. sec. 780, y del importe de los sellos forenses que acompañan todo primer escrito presentado ante los tribunales, según dispone el Art. 11, 4 L.P.R.A. sec. 783. En la administración y asignación de fondos provenientes de estas dos fuentes de ingresos, por ser una corporación autónoma, nuestro régimen estatutario da amplia discreción al Colegio de Abogados.

La creación por parte del Colegio de Abogados de un seguro de vida y su ofrecimiento a todos los colegiados está autorizado por el inciso (h) del Art. 2, 4 L.P.R.A. sec. 773(h). El poder correspondiente de asignar una parte de la cuota de membresía a la adquisición del seguro forma parte de la autonomía fiduciaria de la institución, cuya matrícula, reunida en Asamblea Anual, determina la manera de disponer de su presupuesto. Colegio de Abogados v. Schneider II, supra, 514. Nada en la Ley Núm. 43 prohíbe que el Colegio de Abogados haga tal asignación de fondos como medida para instrumentar las facultades que la Ley le confiere, si la Asamblea estima que dicho mecanismo es el más adecuado.

El Colegio de Abogados le ofrece, pues, a sus colegiados una serie de beneficios que se financian, en parte, con el pago de la matrícula. Uno de estos beneficios es la cubierta

de seguro de vida que se ofrece a todos los colegiados por igual. El Colegio también ofrece otros beneficios ordinarios no renunciables ni reembolsables, como la Revista del Colegio de Abogados, o de carácter optativo, como una mayor cubierta en el seguro de vida, un seguro de salud, etc. La Ley no limita la discreción del Colegio de hacer la determinación del carácter ordinario u optativo de un beneficio y de los fondos con que ha de sufragarlo.

Esta postura es cónsona con nuestra jurisprudencia. Así, en nuestro anterior pronunciamiento en torno al uso de las cuotas pagadas al Colegio de Abogados, secundamos la voluntad de la Asamblea Legislativa al entender como una legítima asignación de fondos aquella destinada a las actividades comprendidas entre los deberes y funciones de la organización. Colegio de Abogados v. Schneider II, supra, 522-24. Enumeramos allí expresamente, como función legítima, la creación de "montepíos, sistemas de seguros y fondos especiales" mencionada en la Ley Núm. 43, 4 L.P.R.A. sec. 771, 773(h). Le corresponde al Colegio de Abogados, en primera instancia, decidir cómo poner en efecto dicha facultad.

## IV

Entendemos que la asignación por parte del Colegio de Abogados de Puerto Rico de una porción de los ingresos devengados del cobro de cuotas de membresía a la adquisición de un seguro de vida compulsorio para todos sus miembros está autorizado por la Ley Núm. 43, según enmendada. Adoptamos el criterio legislativo a estos efectos y no encontramos, a la luz de nuestra jurisprudencia, que dicho uso de las cuotas esté expresamente prohibido por nuestro derecho.

Así, contestamos la interrogante referida en la afirmativa. En los términos precisos y específicos en los que la Corte de Distrito ha planteado la cuestión, concluimos que el Colegio de Abogados de Puerto Rico está facultado, como cuestión de derecho, a asignar una parte del dinero obtenido mediante el cobro de cuotas a la adquisición de un plan de seguro de vida compulsorio.

Se dictará la Sentencia correspondiente.

FEDERICO HERNÁNDEZ DENTON
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos Romero, hijo

   Demandante

      v.                                    CT-2000-2

Colegio de Abogados
de Puerto Rico, et al

   Demandados

SENTENCIA

San Juan, Puerto Rico, a 12 de junio de 2001.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se contesta en la afirmativa la cuestión certificada. Evaluada la solicitud de certificación de la Corte de los Estados Unidos para el Distrito de Puerto Rico y los alegatos de las partes, se resuelve que el Colegio de Abogados de Puerto Rico está facultado para asignar una parte del dinero obtenido mediante el cobro de cuotas a la adquisición de un plan de seguro de vida compulsorio.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López concurre en el resultado sin opinión escrita. Los Jueces Asociados señor Corrada del Río y señor Rivera Pérez "están conformes con las conclusiones respecto a los asuntos objeto de certificación, pero disienten, en parte, por entender que no es del todo correcta la conclusión a manera de dictum, y por tanto innecesaria, a que llega la mayoría en la página número cuatro(4) de la Opinión, cuando se refiere a este Tribunal, a los efectos de que 'constitucionalmente, es el Tribunal Supremo de Puerto Rico a quien

corresponde la autoridad de interpretar las leyes y la Constitución del Estado Libre Asociado'. El Artículo V de la Constitución de Puerto Rico establece la autoridad máxima de este Tribunal, por virtud de la cual puede interpretar el ordenamiento jurídico puertorriqueño. Es de aplicación a Puerto Rico la doctrina de abstención judicial establecida por el Tribunal Supremo de los Estados Unidos, por virtud de la cual este Tribunal descarga ese ministerio en un caso como el presente. Fornaris v. Ridge Tool Co., 400 U.S. 41 (1970); England v. Medical Examiners, 375 U.S. 411 (1964). No obstante, como es la situación de los Estados de la Unión por imperativo del federalismo, no existe reserva de autoridad alguna de este Tribunal, como parte del Gobierno de Puerto Rico, en la Constitución de los Estados Unidos, para tal propósito. Alden v. Maine, 119 S.Ct. 2240 (1999); Quackenbush v. Allstate Ins. Co., 116 S.Ct. 1712 (1996); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 28 (1959); Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Entendemos que los tres niveles del sistema de tribunales federal, incluyendo el Tribunal Supremo de los Estados Unidos, tienen autoridad para interpretar el ordenamiento jurídico puertorriqueño —ejemplo de ello son aquellos asuntos que van directamente a la jurisdicción federal por diversidad de ciudadanía— y no están obligados, por ser discrecional el certificar un asunto a este Tribunal, cuando tienen jurisdicción para entender en el mismo. National Pharmacies v. Feliciano-D-Melecio, 221 F. 3d 235, 241 (1st Cir.2000); Trull v. Volkswagen, 187 F.3d 88 (1st Cir.1999); Kansallis Finance Ltd. v. Fern, 40 F.3d 476, 481 (1st Cir.1994); Cuesnongle v. Ramos, 835 F.2d 1486 (1st Cir.1987); Ruiz Rodríguez v. Litlon Indus. Leasing Corp., 574 F.2d 44, 46 (1st Cir.1978)".


Isabel Llompart Zeno
Secretaria del Tribunal Supremo